13 N.J. Super. 357 (1951)
80 A.2d 567
CYRIL STANDIFORD, PLAINTIFF-APPELLANT,
v.
MEYER BERNHARDT AND SAMUEL BERNHARDT t/a HAWTHORNE SUPER SERVICE STATION, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 30, 1951.
Decided May 8, 1951.
*359 Before Judges McGEEHAN, JAYNE and WM. J. BRENNAN, JR.
Mr. William R. Morris argued the cause for appellant.
Mr. Gerald T. Foley argued the cause for respondents.
The opinion of the court was delivered by JAYNE, J.A.D.
The factual aspects of this case are all displayed by the testimony introduced on behalf of the plaintiff because at the completion of the presentation of that evidence the court, in pursuance of the motion of the defendants, determined that upon the facts and the law the plaintiff had not shown a right to relief. Rule 3:41-2.
On Sunday, November 10, 1946, the plaintiff having had "a little argument around the house" and "wanted to get out" inaugurated the day's adventures with a visit to Ben's Tavern where at about noon, as so often occurs in such surroundings, he met a friend whom he had not seen for several years. They indulged in "the feast of reason and the flow of soul."
It may be inferred that at some stage of their conversation the plaintiff divulged that his automobile was in need of some mechanical repair, whereupon his friend George assured him that he was a motor vehicle mechanic and expressed his desire to show the plaintiff the automobile service station and repair shop of the defendants at which he was occasionally employed. There is some intimation that en route to the service station plaintiff's vehicle collided with another vehicle, but we entirely ignore it.
*360 The plaintiff and his companion arrived at the service station at about 3:30 in the afternoon. It was closed on Sundays. They observed no one at or around the premises. Plaintiff parked his vehicle on the driveway beneath the canopy of the station and noticed that automobiles were standing on top of each of the two nearby grease pits. George then departed. The plaintiff understood that his friend's mission was to change his clothes. George ascribes it to the need of more money.
Thus circumstanced, the plaintiff was overtaken by an attack of irresistible drowsiness and fell asleep on the driver's seat of his car, where Morpheus held him captive until George returned at 6:00 P.M.
After an interlude of about 20 minutes in duration at a neighborhood restaurant, the plaintiff and his friend George discovered another tavern conveniently located, which they entered.
The plaintiff stated that there he began to play shuffleboard. He explained that it is "customary to drink at the end of each game" and that "some go faster than others."
At about 9:30 P.M. the plaintiff noticed that George had disappeared. The plaintiff experienced some anxiety:
"Q. Was there any particular reason why you wanted to see him at that time?
A. Yes, he wanders around when he gets tanked up, and I didn't want to see him get hurt."
In search of George the plaintiff visited the service station and discovering that his automobile was not there, he returned to the tavern to resume the game and presumably its customary accompaniments. He elucidates his state of mind at that time: "I thought some children might have taken it." He did, however, communicate the information to the police department that his car was missing. It was later revealed that George had only wandered across the street to acquaint himself with the accommodations of another tavern.
At 11 o'clock at night the plaintiff again returned to the service station. His car was not in the driveway where he had *361 originally parked it, so he began to explore the premises. It was so dark that he could not see the surface over which he was walking. Nevertheless he walked forward in the darkness without looking downward, tripped over the surrounding coping and fell into one of the grease pits. The photographs disclose that the pits are on private property and within the area beneath the roof of the building.
It could not be logically inferred from any of the evidence that the plaintiff was either expressly or impliedly invited to enter upon that part of the defendants' premises at 11 o'clock on a Sunday night during which the station was closed.
At the trial some three years after the occurrence of the mishap, counsel for the plaintiff, apparently in recognition of the inadequacy of the evidence to support a cause of action upon that theory of liability, sought to amend the complaint and the issue theretofore framed at the pretrial conference to allege that the plaintiff was a licensee and that the existence of the grease pit in its unguarded location on the premises constituted a trap.
The motion to amend was denied. While leave to amend "shall be freely given when justice so requires" (Rule 3:15-1, 2), yet we do not perceive that in the present case the denial of the motion injuriously affected the substantial rights of the plaintiff. Rules 1:2-20; 4:2-6. Assuming that the plaintiff occupied the status of a licensee, we quote: "The general rule with regard to the duty which a landowner owes to persons coming upon his premises is that where the entry is made by his invitation, either express or implied, he is required to use reasonable care to have his premises in a safe condition; but that where the entry is made merely by his permission (and, a fortiori, where it is an actual trespass) the landowner is under no obligation to keep his premises in a non-hazardous state; his only duty to a licensee or a trespasser is to abstain from acts wilfully injurious." D., L. & W.R.R. Co. v. Reich, 61 N.J.L. 635, 643 (E. & A. 1898).
And also: "Granting that it appears that a plaintiff's *362 entry upon premises was by the invitation of the owner, a question may also arise, whether, at the time the injury was received, the plaintiff was in that part of the premises into which he was invited to enter. The owner's liability for the condition of the premises is only co-extensive with his invitation. A person on private grounds by invitation of the owner, going of his own volition into other parts of the premises, exceeds the bounds of his invitation, and if he does not thereby become a trespasser, goes out of the way to create a risk for himself." Phillips v. Library Co., 55 N.J.L. 307, 315 (E. & A. 1893). See, also, Fitzpatrick v. Glass Mfg. Co., 61 N.J.L. 378 (Sup. Ct. 1898); Taylor v. Haddonfield & Camden Turnpike Co., 65 N.J.L. 102 (Sup. Ct. 1900); Ryerson v. Bathgate, 67 N.J.L. 337 (E. & A. 1902); Carey v. Gray, 98 N.J.L. 217 (E. & A. 1922); Sohn v. Katz, 112 N.J.L. 106 (E. & A. 1934).
A case having a conspicuous resemblance to the one sub judice is Porchey v. Kelling, 185 S.W.2d 820 (Sup. Ct. Mo. 1945), in which the court declared that a possessor of an automobile service station is not liable for injury to a licensee who falls into a grease pit which was maintained in the furtherance of the possessor's business, where the alleged negligence, if any, is passive.
This case rests upon its own particular circumstances, in view of which we conclude that the action of the trial judge was entirely justified.
The judgment is affirmed.