Jasen, J.
The issue presented on this appeal is whether the provision in a separation agreement obligating the husband to make support payments to his wife survives his death and is binding on his estate.
Helen and Arthur Cohen were married in 1942 in New York City. They were married for nearly 30 years and had three children, all now fully grown. In March, 1972, the parties separated and began living apart from each other. On *44 October 6, 1972, they entered into a separation agreement. The agreement provided that the husband "shall pay to the wife on the first day of the month next ensuing the date of execution of this agreement by the parties hereto, the sum of $400.00 each month for the wife’s separate maintenance and support until she shall remarry or expire.” The agreement required the husband to deliver to the wife a deed conveying title to the marital residence. The wife, however, was obligated to pay all costs and expenses incurred by virtue of her ownership of the home, including mortgage payments, real property taxes, insurance premiums and the cost of maintaining and repairing the house. All of the personal property contained in the house was to be retained by the wife. The husband agreed to pay the premiums arising from the wife’s hospitalization and medical services insurance policy. The wife was to make the payments on her own in the event that she became employed. The agreement recited that in its negotiation and preparation, "the parties have taken into consideration that the WIFE is not now employed and that she accepts the provisions herein made for her in full satisfaction for her support and maintenance”. The parties agreed to release each other from any claims not arising from the agreement and waived their respective rights to "share” in the other’s estate. The agreement contained the entire contract between the parties and was not to be incorporated in any future divorce decree.
Arthur Cohen died on November 26, 1972, less than two months after the execution of the separation agreement. Although he was endeavoring to obtain a Dominican divorce, the parties were still married and living apart, pursuant to the separation agreement, at the time of his death. While the deed to the marital home had been delivered to the wife, no support payments had been made. The wife sought to charge her husband’s estate with the obligation to make the monthly payments provided for in the separation agreement. Upon rejection of her claim by the executor of the estate, she commenced this action. The executor’s answer denied, on information and belief, only two paragraphs of the complaint; the paragraph alleging that the claim for the support payments was due and owing and the paragraph alleging that the action had been timely commenced.* The answer also con *45 tained a motion for summary judgment, predicated upon the nonexistence of any factual issues and the lack of legal merit to the plaintiff’s cause of action. By way of response, the plaintiff moved for summary judgment in her favor. In support of his motion, the executor submitted an attorney’s affirmation, and, later, a reply affirmation. The plaintiff produced an attorney’s affidavit. However, none of these statements even so much as hinted at the existence of any factual issues. Rather, the papers merely argued the legal conclusions to be drawn from the written terms of the separation agreement.
Special Term granted summary judgment to the plaintiff and directed that the executor establish a reserve fund sufficient to cover the estate’s obligation to make support payments. The Appellate Division modified the judgment by striking the grant of summary judgment and the direction to establish a reserve fund. The court concluded that the separation agreement presented an ambiguity which should be resolved at trial. Leave to appeal to our court was granted, the Appellate Division certifying a question as to the propriety of its order.
We start with the well-accepted proposition that a husband’s obligation to support his wife terminates with the husband’s death. However, the husband might, by agreement, impose upon his estate a duty to make alimony or support payments after his death. (See, e.g., Wilson v Hinman, 182 NY 408, 412, 414; Barnes v Klug, 129 App Div 192, 195; Matter of Baratta, 199 Misc 246, affd 279 App Div 992.) In order to bind the estate, a separation agreement must either specifically provide for the continuation of payments or evince, from the terms of the agreement read as a whole, a clear intention that support payments continue, notwithstanding the husband’s death. (Cooke v Cooke, 2 AD2d 128, 133; Matter of Davis, 32 AD2d 667, 668; Matter of Howe, 15 Misc 2d 1044, 1046, affd 8 AD2d 720; 16 NY Jur, Domestic Relations, § 690, pp 249-250; Ann., 75 ALR2d 1085, 1086.) While explicit agreement by the parties is obviously much to be preferred, where such explicit agreement is lacking, the court must read the document as a *46 whole in its total context and examine each of its provisions in order to ascertain the overriding intention of the parties. (Cooke v Cooke, supra; Lepsch v Lepsch, 275 App Div 412, 415; Matter of Stableford, 174 Misc 284, 285; Matter of Junge, 125 Misc 707, 709; 2 Foster & Freed, Law and the Family, § 28:61, pp 469-470.) Since the burden of proof is borne by the claimant, the wife must establish, to the satisfaction of the court, that the parties actually intended to extend the obligation to make support payments beyond the husband’s lifetime. (Lepsch v Lepsch, supra; Matter of Porter, 208 Misc 611, 612; Matter of Baratta, 199 Misc 246, 248, affd 279 App Div 992, supra; 16 NY Jur, Domestic Relations, § 690, p 251.)
From our analysis of the agreement, we conclude that the provision in the agreement for the support payments to the wife to continue "until she shall remarry or expire”, without any qualifying or limiting language, obligates the husband’s estate to make the payments for the lifetime of the wife. Nowhere in the agreement is it suggested that payments are to be made during the joint lives of the parties or that the agreement would terminate upon death of either party. On the contrary, the agreement expressly states that termination of the payments of support would only occur where the wife has either remarried or died. The parties expressly noted that the wife was not employed and that the payments were to be made "in full satisfaction for her support and maintenance”. It was clearly anticipated that the payments to the wife would be her sole source of income. It is significant that the wife, while given title to the marital home and its furnishings, was required to pay for its upkeep, although she had no income of her own. She was required to bear the cost of home maintenance "in consideration” of the support payments and the deed of title. Since, so far as appears, the support payments were her sole source of income and the parties intended that she would apply a portion of these payments to cover the house expenses, we must conclude, in the absence of any qualifying or limiting language, that the parties intended that the source be continuously available as the charges were continually recurring.
In the agreement, the wife also waived all of her other rights to share in her husband’s estate. It is only reasonable that, in consideration for the release of her other marital rights, the wife acquired the security of having periodic payments made for her support during her lifetime, or, at least, *47 until a remarriage. (Matter of Howe, 15 Misc 2d 1044, 1046-1047, affd 8 AD2d 720, supra.) It would be particularly harsh to deny her the security evidently bargained for in a situation where she was required, in partial exchange for the continuing payments, to assume the cost of maintaining the marital home, her place of residence.
Matter of Kahn (21 NY2d 653), upon which respondent places great reliance, is readily distinguishable. In that case, aside from the periodic payments, which were also to cover the cost of child support, the husband paid $5,000 to the wife in discharge of " 'any claim she may have against the husband or his estate’ ” (p 654). Moreover, he also designated her as the irrevocable beneficiary of insurance policies, upon which he paid the premiums. From these facts and the other surrounding circumstances, it was found that there was no intent to extend payments beyond the husband’s lifetime (p 654). Unlike Kahn, the agreement involved in this case does not make provision for any other payments to the wife, aside from the support payments. No effort was made to make other provision for the wife’s support after the husband’s death. (Cf. Cooke v Cooke, 2 AD2d 128, 136, supra.) Secondly, while the wife did waive her rights to share in the estate of her husband, she did not release "any claim” arising out of the agreement that she might subsequently acquire against her husband or his estate.
The cases of Cooke v Cooke (2 AD2d 128, supra) and Matter of Porter (208 Misc 611, supra) are also unavailing to the respondent. In those cases, the agreements provided that the periodic payments were subject to change, in the event of reduction in the husband’s annual income. Since the husband’s death would eliminate the standard by which the payments were to be measured, the obligation to make payments was intended not to survive his death.
Although this separation agreement does not specifically provide for the continuation of payments after the husband’s death, we believe that the tenor of the separation agreement reflects an intent to obligate the estate, in the event of the husband’s death, to make the support payments called for in the agreement. Not having been shown any evidence extrinsic to the agreement that would support a contrary interpretation (CPLR 3212, subd [b]; Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 3212.16, pp 436-437; see Surrey Strathmore Corp. v Dollar Sav. Bank of N. Y., 36 NY2d 173, 177), we hold that Special Term properly granted *48 the plaintiff summary judgment. (Boardman, New York Family Law, § 40.07, p 144.) Since the plaintiff is a creditor of the estate, she was also entitled, as provided for in the order of Special Term, to have a reserve fund established to insure that adequate funds would be set aside to satisfy the estate’s obligation to her. (SCPA 1804; Matter of Howe, 15 Misc 2d 1044, 1048, affd 8 AD2d 720, supra; Matter of Grimley, 200 Misc 901, 903.)
Accordingly, we would reverse the order of the Appellate Division and reinstate the order and the judgment of Special Term. (7 Weinstein-Korn-Miller, NY Civ Prac, par 5613.03.) The question certified is answered in the negative.
Chief Judge Breitel and Judges Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur.
Order reversed, with costs, and the order and the judgment of Supreme Court, Suffolk County, reinstated. Question certified answered in the negative.

 Defendant disputed the plaintiffs contention that suit had been commenced within 60 days after rejection of the claim by the executor. (See SCPA 1810.) *45 Although the record is silent as to when the plaintiff served the defendant with process, we note that the claim was rejected on July 17, 1973, and that the defendant’s answer is dated August 31, 1973, well within the 60-day period. In any event, the defendant has not raised this argument on appeal and, therefore, has waived the point.