Jean M. LIPE, as executrix of the Estate of Gordon C. Lipe, and as trustee of the Lipe Family Trust, Appellant (Plaintiff),

v.

Phyllis B. LIPE, Appellee (Defendant).

No. 86–103.

Supreme Court of Wyoming.

Dec. 5, 1986.

Don W. Riske, Cheyenne, for appellant.

Bret F. King of King & King, Jackson, for appellee.

Before THOMAS, C.J., and BROWN, CARDINE, URBIGKIT and MACY, JJ.

URBIGKIT, Justice.

This appeal addresses the issue whether a separation agreement obligating the ex-husband to make support payments for his ex-wife survives his death in order to bind his estate. We decide this case by application of New York law by affirming the trial court which construed the agreement in favor of the divorced wife and against the estate for which the succeeding wife is executrix. The actual probate estate in Wyoming is de minimis.

Gordon and Phyllis Lipe were married on May 7, 1949 in New York State and were favored by five children. In 1973, when the disaffinity in the marital relationship surfaced by separation proceedings, three of the children were substantially under the age of majority. On November 15, 1973, a separation agreement was executed, followed by a divorce in New York in 1975. Jean succeeded Phyllis as wife, and Gordon died in 1983 as a resident of Teton County (Jackson, Wyoming), with an indicated estate of about $5,000 and creditors' claims of at least $3,500.[1]

This litigation commenced when ex-wife Phyllis filed a creditor's claim for post-death support in the Teton County probate estate. At about the same time, Phyllis filed an action to collect continuing support in New York, naming Jean as the defendant, both as executrix and trustee. Jean countered by filing this separate lawsuit in Teton County for a declaratory judgment to void the creditor's claim.

The parties later agreed by stipulation that the claims in the New York proceedings would be dismissed and incorporated by reference in the Teton County proceedings, so that the complaint in New York

---

1. The record suggests that some time after his divorce and remarriage (about 1977) Gordon transferred essentially all his assets to the Lipe Family Trust, naming Jean M. Lipe, his new wife, as trustee.

would become a counterclaim in the Teton County litigation.

Following reciprocal motions for summary judgment, the district court granted summary judgment in Teton County in favor of ex-wife Phyllis against Jean as *executrix.* No resolution or disposition of the claim against Jean as trustee was included, and after interim processing, including an aborted appeal, another order was entered dismissing the claim of Phyllis against Jean as trustee, without prejudice. The order now challenged on appeal to this court is the original summary-judgment decision in favor of ex-wife Phyllis against Jean as executrix.

The parties have stipulated, as provided by the separation agreement, that their claims will be interpreted pursuant to New York law.[2]

The parties agree and this court recognizes that the New York case of *Cohen v. Cronin,* 39 N.Y.2d 42, 382 N.Y.S.2d 724, 346 N.E.2d 524, 5 A.L.R. 4th 1146 (1976), in which a support obligation was enforced against the husband's estate, is controlling as a dispositive statement of New York law on the question of the survival of support rights of an ex-wife following the husband's death. The trial court determined that this case was factually similar and consequently controlled by the Cohen result. Appellant now seeks to distinguish the contractual provisions in this case from those in Cohen, and urges this court to hold that the trial court erred in applying Cohen to enforce a support obligation against the Lipe estate.

The Cohen court stated the general principles as follows:

"We start with the well-accepted proposition that a husband's obligation to support his wife terminates with the husband's death. However, the husband might, by agreement, impose upon his estate a duty to make alimony or support payments after his death. * * * In order to bind the estate, a separation agreement must either specifically provide for the continuation of payments or evince, from the terms of the agreement read as a whole, a clear intention that support payments continue, notwithstanding the husband's death. * * * While explicit agreement by the parties is obviously much to be preferred, where such explicit agreement is lacking, the court must read the document as a whole in its total context and examine each of its provisions in order to ascertain the overriding intention of the parties. * * Since the burden of proof is borne by the claimant, the wife must establish, to the satisfaction of the court, that the parties actually intended to extend the obligation to make support payments beyond the husband's lifetime." 382 N.Y.S.2d at 725–727, 346 N.E.2d at 526–527.

In further discussion, the Cohen court concluded that in the absence of an explicitly stated intent, the following should be considered as persuasive by inclusion or exclusion:

(1) The lack of any termination provision upon death of the husband;

(2) An express statement "that termination of the payments of support would only occur where the wife has either remarried or died";

(3) A statement that the payments were "in full satisfaction for her support and maintenance";

(4) A waiver of the right to share in the husband's estate;

(5) A conclusion by the court that the payments would be the wife's sole source of income.

The court in Cohen distinguished three earlier New York cases which refused to allow post-death support payments: *In re Kahn's Estate,* 21 N.Y.2d 653, 287 N.Y.

**2.** It is apparent that a decision in this case will not be dispositive of the controversy between Phyllis and Jean Lipe, since the probate estate will not afford any significant funding for payment of the creditor's claim. The action likely to follow our affirmation of the trial court will be a proceeding to set aside the transfer of assets by Gordon Lipe to the Lipe Family Trust. That subject was removed from the present litigation by the dismissal without prejudice of the claim against Jean as *trustee* of the Lipe Family Trust.

S.2d 86, 234 N.E.2d 250 (1967); *Cooke v. Cooke*, 2 A.D.2d 128, 154 N.Y.S.2d 757 (1956); and *Matter of Porter's Estate*, 208 Misc. 611, 137 N.Y.S.2d 271 (1954). Kahn was distinguished because in that case the wife received a payment separately in discharge of any claim she might have against the husband or his estate," and she was designated as an irrevocable beneficiary of his insurance policies. The trial court in Kahn found no intent to extend payments beyond the husband's lifetime. Cooke and Porter were distinguished because in those cases the husband's periodic payments were subject to change if his income decreased. Those courts reasoned that since the husband's death would eliminate the standard by which the payments were to be measured, the obligation to make the payments was not intended to survive his death.

In Cohen, on the other hand, no such provisions were included, and the court held:

"Although this separation agreement does not specifically provide for the continuation of payments after the husband's death, we believe that the tenor of the separation agreement reflects an intent to obligate the estate, in the event of the husband's death, to make the support payments called for in the agreement. [We have not] been shown any evidence extrinsic to the agreement that would support a contrary interpretation * * *." 382 N.Y.S.2d at 727, 346 N.E.2d at 528.

Appellant now, in recognizing the controlling purview of Cohen, argues that the following factors distinguish this case: (1) The parties' agreement required a cash payment of $133,550 and medical and educational expenses for the children; (2) Gordon Lipe assigned to Phyllis his interest in an insurance policy; (3) the agreement included a provision to modify the amount of the payment; and (4) each party contractually waived and relinquished any and all rights which he or she might have or hereafter acquire regarding the estate of the other.

Consequently, we apply both appellant's contended distinctions and the criteria announced in Cohen to the facts of this case.

*Cash Payment*

The initial payment of $133,550, agreed upon by Gordon and Phyllis, consisted of:

1. attorney's fees $5,000;
2. new automobile $2,000;
3. cash $10,000;
4. one month support before the agreement for the other support provisions went into effect $1,550;
5. a settlement arrangement whereby the husband retained the family home and agreed to pay to the wife, for her interest, $115,000 in installments, fully payable not later than June 1, 1978.

Except for the one monthly installment, which was a gap payment before the regular monthly support-payment provision commenced, none of these payments could be reasonably defined as *support*. The property-settlement arrangement does not affect the parties' agreed support obligation. Consequently, we do not find that the Lipe's settlement arrangement takes this case out of the purview of Cohen.

*Express Statement*

The Cohen agreement provided for payment for the wife's separate maintenance and support "until she shall remarry or expire." 382 N.Y.S.2d at 725, 346 N.E.2d at 526. The Lipe agreement provided:

"In the event that a divorce shall occur between the parties and the Wife should remarry, or upon the death of the Wife, all support payable by the Husband for the Wife shall cease and terminate.",

and:

"So long as the Wife is not remarried * * [p]ayments to the Wife shall remain constant and not be diminished, despite there no longer being dependent children. If the Wife remarries * * * the Husband shall pay to the Wife $ * * * for the support of each child in the custody of the Wife until such child shall reach 21 years or ceased schooling and becomes gainfully employed."

Neither agreement contained a provision for the termination of support payments upon the death of the husband. Rather, each agreement explicitly stated that the criteria for termination were remarriage or death of the ex-wife. The Cohen court concluded that such a provision,

" * * * without any qualifying or limiting language, obligates the husband's estate to make the payments for the lifetime of the wife. * * * [T]he agreement expressly states that termination of the payments of support would only occur where the wife has either re-married or died." 382 N.Y.S.2d at 727, 346 N.E.2d at 527.

*Full Satisfaction Statement*

Cohen provided:

" * * * '[T]he parties have taken into consideration that the WIFE is not now employed and that she accepts the provisions herein made for her in full satisfaction for her support and maintenance'. The parties agreed to release each other from any claims *not arising from the agreement* and waived their respective rights to 'share' in the other's estate." (Emphasis added.) 382 N.Y.S.2d at 725, 346 N.E.2d at 526.

The Lipe agreement provides:

"*Subject to the provisions of this Agreement,* and any escrow agreement between the parties, each party has remised, released and forever discharged and by these presents does for himself or herself, and his or her heirs, legal representatives, executors, administrators and assigns, remise, release and forever discharge the other of and from all cause or causes of action, claims, rights or demands whatsoever, in law or in equity, which either party hereto ever had nor now has against the other, except any or all cause or causes of action for divorce." (Emphasis added.)

In both cases the release clauses are similarly subject to the agreement provisions. The Cohen court found that the entire agreement, wherein claims for support were excepted from release, reflected the parties' intent that the support payments continue after the husband's death. Since the same analysis applies to this case, the claims-release clause in Lipe cannot be construed as a waiver of any claim for post-death support payments. Rather, the release applies only if the agreement, read as a whole, indicates that the parties did not intend the payment obligation to survive Gordon's death. We are constrained to follow the Cohen analysis and conclude that the existence of this type of release clause does not of itself constitute a waiver of any claim for post-death support payments.

*Sole Source of Income*

Excluding the interim litigative type of expenses, one month support, and the property settlement provisions, it is apparent that the $13,000 annual amount was the sole source of income afforded to Mrs. Lipe by the separation agreement. She did not receive any annuity or apparent income-producing property. Likewise, in Cohen, the support payments after property settlement were the wife's sole source of income. That court emphasized this fact in concluding that the parties intended the payments to continue after the husband's death. The parties' agreement in this case supports the same conclusion.

*Assignment of Insurance Policy*

The Lipe insurance policy assignment provision stated:

"The Husband shall assign to the Wife all his right, title and interest, if any, to a certain [life policy] of which the Wife is presently the owner and beneficiary, and the Husband agrees to execute the necessary instruments as provided by the insurance company to effectuate such transfer."

We determine that this provision was a property-settlement disposition of an asset previously vested in the wife, not an arrangement designed to fulfill Mr. Lipe's prior post-death obligation for ex-wife support.

## Support Modification Factor

Only one difference worth noting exists between the Cohen and Lipe agreements. Unlike Cohen, the Lipe agreement included a provision for an upward adjustment of the support payment based on the net income of the husband and the following retirement provisions:

"When the Husband reaches the age of 62 and is contemplating retirement, the Wife consents that the parties hereto may renegotiate this section of this Agreement as it relates to support payments, and if the parties cannot agree to a fair and equitable renegotiation satisfactory to both, then the support question may be submitted to a court of competent jurisdiction entitled to the full enforcement of law where the Wife may reside at the time."

We do not find that the existence of either modification provision is sufficient to take this case out of the reach of the Cohen result. Unlike the agreements in Cooke and Porter, where the amount of the support payment was to decrease as the husband's income decreased, this agreement does not set up Gordon's income as a measuring device which fails at his death. Rather, this agreement provides for a flexible support payment without demonstrating an intent that the payments cease when Gordon dies.

## Other Contentions

Appellant argues that Paragraph 16 of the instant agreement constitutes a post-death waiver for the remaining estate. We are not so persuaded upon review of the initiating parenthetical clause which serves to clarify the agreement obligations as non-released: "Subject to the provisions of this Agreement, each party may * * * dispose * * *; and each party * * * hereby waives * * *." This introductory clause relates to the subject matter of the paragraph and not just the first independent clause. The parallel terminology of Paragraph 15, earlier quoted, substantiates this linguistic resolution as to the intent manifested by the agreement. Furthermore, Paragraph 20 provides:

"This Agreement shall inure to the benefit of and be binding upon the parties and their respective estates and legal representatives."

*Will of Weed,* 63 A.D.2d 823, 406 N.Y. S.2d 180 (1978) is distinguished as differing from this case, where here the insurance policy in pre-agreement status was the property of the wife in legal title, to be then retained by her in the separation agreement property-settlement provisions. Differing also is *Matter of Estate of Bardol,* 51 A.D.2d 341, 381 N.Y.S.2d 558, 560 (1976), where initially there was no insurance policy but the agreement then provided that "the claimant may obtain insurance on her husband's life in order to secure herself 'adequate support' in the event of his death." Also in Bardol, the court found that Cohen test criteria were not included since the agreement lacked any waiver of rights in the estate of the spouse, but included only a waiver of interest in the estates of relatives.

## Conclusion

When read as a whole, the Lipe agreement, like that of Cohen, demonstrates the parties' strong general intent that the support obligation was of the essence of her post-divorce status and was to continue, without regard for Gordon's death, until her death or remarriage. The decision to be made is one of law, and we agree that the rule in Cohen supports the conclusions of the trial court:

"2. That New York law provides that as a general proposition a husband's obligation to support his wife terminates with the husband's death but that the husband might by agreement, impose upon his estate the duty to make alimony or support payments after his death.

"3. That reading the Separation Agreement dated November 15, 1973, and the affidavits the Court finds that the intent of the parties was that the alimony payments were to continue after the death of Gordon C. Lipe.

"4. The Separation Agreement provides for the continuation of payments notwithstanding the death of Gordon C. Lipe

as evidenced from the terms of the agreement read as a whole. Cohen vs. Cohen [Cronin] 39 NY2d 42 [382 N.Y. S.2d 724, 346 N.E.2d 524]."

In agreement with those conclusions, we affirm.