OPINION OF THE COURT
 

 Bellacosa, J.
 

 This controversy is procedurally set in a proceeding to determine the validity of a claim against an estate (SCPA 1809). The issue is whether the former wife, Judy Riconda, is entitled to maintenance payable out of the estate of her deceased former spouse, during her lifetime or until her remarriage (see,
 
 Cohen v Cronin,
 
 39 NY2d 42).
 

 The Surrogate’s Court rejected the claim, denied the former wife’s summary judgment motion, and granted the cross motion of the executor (decedent’s and claimant’s son). The Surrogate considered the agreement as a whole to ascertain decedent’s intent and concluded that:
 

 "[T]here was no express provision in the separation agreement specifically binding the decedent’s estate to continue maintenance obligations after his death. Moreover, in examining the terms of [the] agreement as a whole, the court is persuaded that not only was there no intent to continue those payments after his death but the whole tenor of the agreement evidenced an intent to amply provide for the claimant by other means after decedent’s death”.
 

 The Appellate Division unanimously reversed on the law and held that the "Surrogate erred in looking to the separation agreement as a whole to determine the intent of the parties” (236 AD2d 614). That Court limited its inquiry to the terms of the maintenance and binder provisions and determined that:
 

 "The separation agreement provided that the 'husband’s obligation to pay maintenance shall continue until the death or remarriage of the wife.’ Furthermore, the agreement provided that it 'shall be binding upon the heirs, legal representatives and assigns of both parties herein’. Both these provisions manifest a clear intention by the decedent to make maintenance payments survive his death and become an obligation of his estate”
 
 (id.,
 
 at 614).
 

 
 *736
 
 This Court granted leave to appeal to the surviving spouse, Alison Riconda (SCPA 1809 [2]). Because the approach and result of neither lower court is entirely satisfactory as to the application of the pertinent rubrics, we modify to deny summary judgment to all contestants. We discern issues of fact that necessitate a remittal to Surrogate’s Court for further proceedings, the scope of which are properly left to the Surrogate under customary discretionary authority
 
 (see,
 
 SCPA 1809 [3];
 
 see also, Matter of Thoens,
 
 88 Misc 2d 1006, 1007,
 
 affd
 
 51 AD2d 691,
 
 affd
 
 41 NY2d 823;
 
 Matter of Albright,
 
 309 NY 126, 129).
 

 L
 

 Decedent, John Riconda, and claimant, Judy Riconda, were married for 25 years until their separation in 1984. They had three children. At the time of their estrangement, Judy Riconda was approximately 43 years of age and John was approximately 47. Their separation agreement required the husband to make maintenance payments of $1,468 per month "until the death or remarriage of the Wife.” The agreement also provided that its pertinent provisions were to be "binding upon the heirs, legal representatives and assigns of both parties.” They further agreed to release each other from any claims not arising from the agreement and waived théir respective rights to share in one another’s estates.
 

 The agreement also documented the distribution of various assets and personal property of the parties. It noted the deeding over of the marital residence to Judy Riconda. Under the terms of the separation agreement, Judy Riconda received
 
 $120,000
 
 from the sale of two businesses, the proceeds from a $60,000 life insurance policy which named her as irrevocable beneficiary, one half of former husband Riconda’s pension, and an IRA distribution of $16,461 upon the former husband’s death. In 1989, the separation agreement was incorporated but not merged into a judgment of divorce.
 

 In 1990, John Riconda married Alison Schultz, and they remained married until his death on July 22, 1994. John Riconda’s will was admitted to probate and letters testamentary were issued to the decedent’s son, John R. Riconda. As executor, he petitioned the Surrogate to determine the validity of his mother’s claim (SCPA 1809).
 

 IL
 

 Generally, the obligation to make maintenance payments terminates upon the death of either party (Domestic Relations
 
 *737
 
 Law § 236 [B] [6] [c];
 
 see, Hartog v Hartog, 85
 
 NY2d 36, 50;
 
 see also, Cohen v Cronin,
 
 39 NY2d 42, 45, supra;
 
 Wilson v Hinman,
 
 182 NY 408, 412). Parties may, however, modify or extend the duration of maintenance by contract
 
 (see,
 
 Domestic Relations Law § 236 [B] [3];
 
 Cohen v Cronin, supra,
 
 39 NY2d, at 45;
 
 Matter of Benitez,
 
 191 AD2d 793,
 
 Iv denied
 
 82 NY2d 656; Scheinkman, Practice Commentary, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law C236B:15, at 239, 242; 2 Foster, Freed and Brandes, Law and the Family New York § 2:35, at 238 [2d ed]).
 

 A legislative goal in the legal recognition and protection of maintenance is to permit the recipient spouse an opportunity to achieve independence
 
 (see,
 
 Mem of Assembly Rules Comm, 1980 NY Legis Ann, at 256, 257;
 
 see also,
 
 Scheinkman, Practice Commentary, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law C236B:10, at 224-226). Thus, a separation agreement need not always make provision for maintenance should the circumstances and wishes of the parties indicate otherwise
 
 (see,
 
 General Obligations Law § 5-311;
 
 Greschler v Greschler,
 
 51 NY2d 368, 378; Scheinkman, Practice Commentary, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law C236B:15, at 238).
 

 The intent to vary the statutory and precedential preference of an end to maintenance payments upon death of the payor must be expressed clearly
 
 (see, Matter of Weed,
 
 63 AD2d 823;
 
 Cooke v Cooke,
 
 2 AD2d 128, 132). Indeed, it has been said that a specific, affirmative expression is required for an estate to become liable to make continued maintenance payments to the recipient spouse upon the death of the payor spouse
 
 (see,
 
 2 Foster, Freed and Brandes, Law and the Family New York § 12:58, at 1003 [2d ed]; 11 Scheinkman, New York Law of Domestic Relations §§ 15.18, 15.19, at 623-624). That key expression is not found in the subject agreement.
 

 Absent a specific statement of intent referencing maintenance, all provisions of a document should be considered together and in the context of surrounding circumstances to determine whether the payor spouse actually intended that an estate be charged with the obligation to continue maintenance payments to a recipient spouse after the death of the payor spouse
 
 (see, Cohen v Cronin,
 
 39 NY2d 42, 45-46,
 
 supra).
 
 One treatise expounds as follows:
 

 "The agreement itself, or, if it be ambiguous, the terms thereof when viewed in the light of surround
 
 *738
 
 ing circumstances,
 
 must unequivocally speak out for the continuance of the periodic payments following the death of the husband, or the parties will not be held to have so
 
 intended” (2 Foster, Freed and Brandes, Law and the Family New York § 12:58, at 1003 [2d ed] [emphasis added]).
 

 The Appellate Division in this case rejected that plenary approach in its reversal of the Surrogate’s Court ruling.
 

 Extrapolation of the particularized intent may not usually be by merely culling distinct provisions out of an entire agreement
 
 (see, e.g., Hoeflich v Chemical Bank,
 
 131 AD2d 377;
 
 Matter of Davis,
 
 32 AD2d 667;
 
 see also, Matter of Kahn, 21
 
 NY2d 653, 654;
 
 Eighth Ave. Coach Corp. v City of New York,
 
 286 NY 84, 88;
 
 Cooke v Cooke, 2
 
 AD2d 128, 132-133,
 
 supra).
 
 Rather, as this Court tried to instruct in
 
 Cohen,
 
 the sounder approach is to consider the entirety of the agreement in the context of the parties’ relationship and circumstances
 
 (see, e.g., Cooke v Cooke, supra, 2
 
 AD2d, at 132-133). That allows the courts to reach a more reliable resolution of true intent, in the absence of a definitive direction by the parties.
 

 When the four corners of the agreement contain no unequivocal direction to pay after death, and when discernible manifestations of intent reflect that support for the recipient spouse after the death of the payor spouse is otherwise provided for, the statutory and precedential preference that maintenance obligations terminate upon the death of the payor should ordinarily prevail
 
 (see, e.g., Matter of Benitez,
 
 191 AD2d 793, 793-794,
 
 supra; Matter of Weed,
 
 63 AD2d 823, 823-824,
 
 supra; Maloney v Long Is. Trust Co.,
 
 51 AD2d 578, 579). This approach is also in harmony with traditional norms of contract interpretation
 
 (see, e.g.,
 
 Restatement [Second] of Contracts § 202; 2 Farnsworth, Contracts § 7.10, at 255-256; 11 Scheinkman, New York Law of Domestic Relations § 7.1, at 156).
 

 In
 
 Cohen v Cronin
 
 (39 NY2d 42,
 
 supra),
 
 this Court applied these rubrics and established a reasonable standard for holding that a maintenance payment provision in a separation agreement carried beyond the payor’s death:
 

 "In order to bind the estate, a separation agreement must either specifically provide for the continuation of payments or evince, from the terms of the agreement read as a whole, a clear intention that support payments continue, notwithstanding the husband’s death. * * * While explicit agree
 
 *739
 
 ment by the parties is obviously much to be preferred, where such explicit agreement is lacking, the court must read the document as a whole in its total context and examine each of its provisions in order to ascertain the overriding intention of the parties” (id., at 45-46 [citations omitted]).
 

 In Cohen, as here, the agreement lacked an explicit commitment for the continuation of maintenance payments beyond the payor’s death. In that case, unlike here, however, the parties expressly articulated their expectation that maintenance payments would constitute the unemployed wife’s sole source of income and would be applied to the upkeep of the marital home to which she had been given title
 
 (id.,
 
 at 46). The Court, therefore, held that "the parties intended that the source be continuously available as the charges were continually recurring” (i
 
 d.,
 
 at 46).
 

 Cohen
 
 itself noted distinguishable intent indicators, for example, when provision is made for the distribution of other resources after the payor spouse’s death
 
 (id.,
 
 at 47 [citing
 
 Matter of Kahn,
 
 21 NY2d 653, 654,
 
 supra]).
 
 Independent sources of support, from which an intent not to allow postdeath continuance of maintenance payments may include the designation of a former spouse as irrevocable beneficiary on a life insurance policy and other distributions accruing upon the death of the payor spouse, or a lump-sum transfer in discharge of claims against the estate
 
 (id.; see, Hartog v Hartog,
 
 85 NY2d 36, 50,
 
 supra; Matter of Benitez,
 
 191 AD2d 793,
 
 supra; Matter of Weed,
 
 63 AD2d 823, 824;
 
 supra).
 

 We would emphasize in this connection, though, that SCPA 1809 proceedings are not procedural substitutes for redistribution of or reassessment of the adequacy of the property divisions previously contractually allocated between married parties within their separation agreements. The judicial search is for specific, relevant contractual intent of the
 
 parties,
 
 and the inquiry ought to eschew a virtual pro rata accounting of the ultimate fairness or adequacy of the property divisions made by the parties in their agreements. Moreover, this type of proceeding is not an equitable distribution substitute, nor is it governed by the criteria of that specialized universe.
 

 ¡IL
 

 The Ricondas’ separation agreement simply provides for maintenance payments until her death or remarriage. It is, however, silent as to the eventuality and consequence of his
 
 *740
 
 predeceasing her. The completion of the puzzle of this case is, thus, elusive when that key piece is missing from the agreement. Nor should the fit be forced by rearrangement of or undue exclusive reliance on two clauses, to wit, the maintenance and binder clauses, in isolation from everything else. We hold, therefore, that the governing principles of contract interpretation support a more discerning search for the parties’ intent derived from the whole document and set of their particularized circumstances
 
 (see, Weiss v Weiss, 52
 
 NY2d 170, 174;
 
 Eighth Ave. Coach Corp. v City of New York,
 
 286 NY 84, 88,
 
 supra;
 
 Restatement [Second] of Contracts § 202).
 

 Upon remittal, the legal intent and effect behind this singularly controverted portion of the agreement, derived from the expression of the parties’ meaning at the time they made the agreement, will be judged within the parameters fixed by well-settled guideposts of contract interpretation and evidentiary admissibility.
 

 We recognize that this will not be an easy task because extrinsic or parol evidence and testimony may be excluded or limited by various rules
 
 (see, e.g.,
 
 CPLR 4519;
 
 Cooke v Cooke, 2
 
 AD2d 128, 136-137,
 
 supra;
 
 Prince, Richardson on Evidence § 6-121, at 325 [Farrell 11th ed];
 
 see also,
 
 CPLR 4503;
 
 Matter of Friedman,
 
 64 AD2d 70, 79, 83-84; Prince, Richardson on Evidence §§ 5-204, 5-210, at 234, 241-242 [Farrell 11th ed]; 5 Barker and Alexander, Evidence in New York State and Federal Courts § 501.1 [a], at 216 [noting that the privilege survives the death of the client but should be "restricted in scope 'to that which is necessary to achieve its purpose’ ”] [quoting
 
 Rossi v Blue Cross & Blue Shield,
 
 73 NY2d 588, 593]).
 

 Some consideration may also have to be given to the question of the legal representation surrounding the preparation of this separation agreement. This may have relevance on the parties’ expressions or failure to denote the specific intent because of inferences ordinarily attributable against drafters of documents
 
 (see, Levine v Levine,
 
 56 NY2d 42, 47-49;
 
 Christian v Christian,
 
 42 NY2d 63, 71-72). It is not insignificant that this controversy arises in part because the claimant’s lawyer drafted the separation agreement and the decedent had no lawyer of his own
 
 (see,
 
 Restatement [Second] of Contracts § 206
 
 [contra preferentem
 
 doctrine of interpretation against the drafter]; 2 Farnsworth, Contracts § 7:11, at 265-268). Thus, the omission of the recommended and customary explicit clause providing for the- circumstance of the death of the payor of maintenance, that was inexplicably left out of this agreement,
 
 *741
 
 ought not be deemed, as a matter of law for summary judgment purposes, as a complete or reliable manifestation of intent for
 
 both
 
 contracting parties in relation to the particular feature now.
 

 Indeed, the record discloses the ultimate irony that claimant even previously sought to set aside the very agreement through which she now asserts this claim against the estate (Suffolk County index No. 85-19499).
 

 In the present setting, the database surrounding and affecting the Riconda separation agreement in relation to the intent bearing on the contested provision is inconclusive or incomplete. That prevents summary resolution of this controversy in a fair, full and reliable fashion
 
 (see,
 
 3 Hillman and Sovronsky, New York Practice Guide, Domestic Relations § 54.08, at 54-32 to 54-33; 1 Lindey, Separation Agreements and Antenuptial Contracts, at 1-3, 6-3 to 6-6; 11 Scheinkman, New York Law of Domestic Relations § 7.1, at 156). We therefore deem summary judgment to be an. unavailable procedural route to a prudently and properly founded resolution of the dispute
 
 (see, Pearce, Urstadt, Mayer & Greer Realty Corp. v Atrium Dev. Assocs.,
 
 77 NY2d 490, 494;
 
 West, Weir & Bartel v Carter Paint Co.,
 
 25 NY2d 535, 540-542).
 

 To avoid these and other problems for their clients, practitioners would do well to use recommended form clauses providing expressly that maintenance payments will continue — or not — upon the death of
 
 either
 
 spouse or the remarriage of the recipient spouse, keyed to the drafting-stage intent of both parties reflected in the executed agreement
 
 (see,
 
 Domestic Relations Law § 236 [B] [13 [a]; [6] [c]; 1 Lindey, Separation Agreements and Antenuptial Contracts, at 15A-7).
 

 Accordingly, the order of the Appellate Division should be modified, and, as so modified, affirmed, with costs to all parties payable out of the estate, and the proceeding remitted to Surrogate’s Court for further appropriate proceedings in accordance with this opinion.
 

 Chief Judge Kaye and Judges Titone, Smith, Levine, Cipakick and Wesley concur.
 

 Order modified, with costs to all parties appearing separately and filing separate briefs payable out of the estate, by denying claimant’s motion for summary judgment and remitting to Surrogate’s Court, Suffolk County, for further proceedings in accordance with the opinion herein and, as so modified, affirmed.