DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ROBERTA SIRGUTZ,**
Appellant,

v.

**BRIAN SIRGUTZ** and **STANLEY SIRGUTZ,**
Appellees.

No. 4D20-1875

[April 28, 2021]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Glenn D. Kelley, Judge; L.T. Case No. 502018CA013755XXXXMB.

Esther A. Zaretsky of Law Offices of Esther A. Zaretsky, West Palm Beach, for appellant.

Brian M. Moskowitz of Law Offices of Brian M. Moskowitz, West Palm Beach, for appellees.

MAY, J.

The former wife appeals a final summary judgment in favor of the former husband's estate that also dismissed her additional claims raised for the first time in her motion for summary judgment. She argues the trial court erred in ruling in favor of the former husband's estate because the Antenuptial Agreement provided that her alimony survived her former husband's death. We disagree and affirm.

The parties were married in New York. They executed an Antenuptial Agreement that provided in relevant part:

> 4. Each party waives, discharges and releases any and all claims and rights that he or she may acquire by reason of the Marriage, including but not limited:
>
> (a) To a share in the estate of the other party, whether by way of dower, thirds, curtsey, survivor's allowance, family or statutory allowance, homestead property rights,

community property rights, exempt property or distribution in intestacy; and

(b) To elect and to take against any last will and testament, codicil or testamentary substitute of the other party, whether heretofore or hereafter made, under Section 5-1.1 of the Estates, Powers and Trusts Law of the State of New York, any law amendatory thereof or supplementary or similar thereto, and the same or similar law of any other jurisdiction. This provision shall serve as a mutual waiver of the right of election in accordance with any statutory requirement; . . .

5. Except as otherwise provided in this Antenuptial Agreement, in the event that the Marriage contemplated herein terminates by divorce, annulment, separation, or death of one of the parties, each of the parties releases and waives all rights that he or she may have or acquire in the Separate Property of the other under any laws of any state or foreign nation as presently or hereafter in effect providing for equitable distribution of income or property upon such termination. Without limiting the generality of the foregoing, each party specifically waives the right of equitable distribution of marital property or any right of a distributive award under the laws of the State of New York as these terms are now defined in the Domestic Relations Law of the State of New York and as they may at any time in the future be defined by such law or any successor statute.

6. Each party hereto waives any right to support, alimony, maintenance or temporary maintenance under the laws of New York State or of any other applicable jurisdiction now or following the Marriage between the parties, except as hereinafter provided in this Article 6.

(iv) (g). If a judgment of separation, divorce or annulment is entered in a proceeding between the parties commenced more than twenty years after the date of the Marriage, the husband shall pay to the wife, for her support and maintenance, $75,000 per year (in twelve equal monthly installments) for a period of two years after the date of entry of such judgment or until the wife's earlier death or remarriage. . . .

7. Notwithstanding the provision of Article 4, **if the parties are still married** to each other and residing together at the time of the [h]usband's death, the [h]usband desires to make a fair and reasonable provision for the [w]ife in lieu of the rights that, after the Marriage, she might or could have had as [w]ife or widow absent this Antenuptial Agreement. The parties therefore agree to the following:

The [h]usband shall, upon the marriage, provide in his last will and testament for a trust fund to take effect upon his death, wherein $200,000 will be placed in trust, the income from said trust to be paid to the [w]ife until the [w]ife's death or remarriage.

. . . .

16. This Antenuptial Agreement shall inure to the benefit and shall be binding upon the heirs, executors, administrators and assigns of the parties.

. . . .

19. This Antenuptial Agreement shall be governed, construed, interpreted and enforced in accordance with the laws of the State of New York.

(Emphasis added). The Antenuptial Agreement was signed by both parties and notarized.

The parties subsequently executed a Modification Agreement, which provided in relevant part:

4. The parties agree that paragraph 4 of the Antenuptial Agreement regarding the [w]ife's waiver of her rights pursuant to the Estates, Powers and Trusts Law of the State of New York is hereby declared null and void, it being the intention of the parties to provide the [w]ife with all of the rights and remedies provided under said statute.

5. It is further agreed that paragraph 7 of the Antenuptial Agreement is hereby declared null and void and as such the [h]usband shall have no obligation whatsoever to establish a trust whereby the [w]ife is entitled to receive income therefrom, it being the intention of the parties that said

3

previous obligation is unnecessary in light of the provisions set forth in paragraph 4 hereinabove.

The Modification Agreement was signed by both parties and two witnesses, but not notarized.

The former husband petitioned for a marriage dissolution in Florida. Because the former wife did not reside in Florida, the trial court was able to exercise jurisdiction only over the dissolution. The trial court entered a final judgment dissolving the marriage, but did not determine the distribution of the parties' marital assets, alimony, or support. A week later, the former husband died.

The former wife sued the former husband's estate for enforcement of the Antenuptial Agreement. She alleged entitlement to lump sum alimony of $150,000 under the parties' Antenuptial Agreement and a declaration that the Modification Agreement voided the Antenuptial Agreement's waiver provisions.

The former wife moved for summary judgment, arguing the Antenuptial Agreement evinced an intent for the lump sum alimony obligation to survive the former husband's death and that she was entitled to homestead property, support, and other marital property. The former husband's estate cross-moved for summary judgment. In response, it argued the Antenuptial Agreement did not evince an intent for the lump sum alimony to survive the former husband's death and the former wife's remaining claims were not properly pled in her complaint.

Following a hearing, the trial court denied the former wife's motion for summary judgment and granted the former husband's estate's cross-motion. The trial court dismissed the former wife's additional claims. The trial court entered a final judgment for the former husband's estate.

The former wife now appeals.

- ***The Lump Sum Alimony Did Not Survive the Former Husband's Death.***

The former wife argues the trial court erred in ruling the Antenuptial Agreement's lump sum alimony obligation did not survive the former husband's death because the clear intent of the agreement was to provide her with survivorship benefits after a dissolution of their marriage. The former husband's estate responds the former husband's obligations terminated upon his passing because the Antenuptial Agreement did not

4

explicitly provide for, nor expressed an intent for survivorship benefits following a marriage dissolution.

"Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law." *Volusia Cnty. v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000). This Court reviews a trial court's ruling on summary judgment de novo. *Id.*

This issue is governed by New York law because the Antenuptial Agreement was executed in New York and includes a provision mandating its interpretation under New York law. *See Lamb v. Lamb*, 154 So. 3d 465, 467 (Fla. 5th DCA 2015) ("Generally, Florida courts enforce contractual choice-of-law provisions unless enforcing the chosen forum's law would contravene strong Florida public policy.").

Under New York law, it is a "well-accepted proposition that a husband's obligation to support his wife terminates with the husband's death." *Cohen v. Cronin*, 39 N.Y.2d 42, 45 (1976). "However, the husband might, by agreement, impose upon his estate a duty to make alimony or support payments after his death." *Id.* "[T]o bind the estate, a separation agreement **must either specifically provide for the continuation of payments or evince, from the terms of the agreement read as a whole, a clear intention that support payments continue**, notwithstanding the husband's death." *Id.* (emphasis added).

The former wife concedes the Antenuptial Agreement does not expressly provide that the lump sum alimony provision survive the former husband's death, but argues that, taken as a whole, its provisions evince an intent to provide as such. She relies on *Cohen* and *Matter of Riconda*, 90 N.Y.2d 733 (1997), in support.

In *Cohen*, the New York Court of Appeals concluded the husband's estate was required to make support payments under the terms of the parties' separation agreement. 39 N.Y.2d at 47. There, the agreement provided that payments would terminate where the wife remarried, or the obligation expired. *Id.* at 46. It did not include language suggesting payments were to be made during the joint lives of the parties or terminate upon death of either party. *Id.* The court reasoned that "in consideration for the release of her other marital rights, the wife acquired the security of having periodic payments made for her support during her lifetime, or, at least, until a remarriage." *Id.* at 46–47.

*Cohen* is inapplicable here, however, because the Antenuptial

Agreement includes other support for the former spouse.

In *Riconda,* the Court of Appeals of New York declined to apply *Cohen.* 90 N.Y.2d at 739. "The judicial search is **for specific, relevant contractual intent of the *parties*. . . .**" *Id.* (emphasis added). Because the agreement in *Riconda* "simply provide[d] for maintenance payments until [the wife's] death or remarriage" and was "silent as to the eventuality and consequence of his predeceasing her," the court remanded the case to the lower court for a determination of the parties' intent in drafting and executing their agreement. *Id.* at 739–40.

Here, the parties' Antenuptial Agreement provided that "the husband shall pay to the wife, for her support and maintenance, $75,000 per year (in twelve equal monthly installments) for a period of two years after the date of entry of such judgment or until the wife's earlier death or remarriage." The Antenuptial Agreement did not speak to the effect of the former husband's death. It expressly provided the former wife had an independent source of income. Under New York law, this was sufficient to establish the presumption that the obligation did not survive the former husband's death. *See id.* at 738 ("When the four corners of the agreement contain no unequivocal direction to pay after death, and when discernible manifestations of intent reflect that support for the recipient spouse after the death of the payor spouse is otherwise provided for, the statutory and precedential preference that maintenance obligations terminate upon the death of the payor should ordinarily prevail.").

The Antenuptial Agreement expressly provided for the former wife's financial support in the event of the former husband's death, "if the parties are still married to each other and residing together at the time of the Husband's death." It provided:

> 7.   Notwithstanding the provisions of Article 4, [the waiver provision], **if the parties are still married to each other and residing together at the time of the [h]usband's death**, the [h]usband desires to make a fair and reasonable provision for the [w]ife in lieu of the rights that, after the Marriage, she might or could have had as a Wife or widow absent this Antenuptial Agreement. The parties therefore agree to the following:
>
> The [h]usband shall, upon the marriage, provide in his last will and testament for a trust fund to take effect upon his death, wherein $200,000 will be placed in trust, the income from said trust to be paid to the wife until the wife's death or

6

remarriage.

It did not include similar language in the lump sum alimony provision.

Because the Antenuptial Agreement provided for the former wife's financial support in the event of the former husband's death only if the parties were still married and residing together, and no similar intent was expressed in the lump sum alimony provision, the former husband did not intend for the former wife to receive alimony payments following his death.

In short, the requisite express intent for survival of the alimony payments cannot be found within the Antenuptial Agreement. The lump sum alimony simply did not survive the former husband's death.[1]

- ### *The Modification Agreement Is Invalid.*

The Modification Agreement does not help the former wife. First, it was not notarized and was therefore improperly executed and unenforceable. *Cf. Lotz v. Lotz*, 522 N.Y.S.2d 730, 732 (App. Div. 1987).

Even if enforceable, the Modification Agreement only evinced an intent for the former wife to have a larger election of the former husband's estate, *if the parties were still married at the time of his death.* The Modification Agreement did not refer to the former wife's lump sum alimony, nor modify the lump sum alimony to provide for it to survive the former husband's death. It refers only to the general waiver provisions in the Antenuptial Agreement and the provision regarding a trust for the former wife, if the parties were still married and residing together at the time of the former husband's death.

While the former husband's death may have been untimely regarding the Antenuptial Agreement given the recency of the dissolution, nothing in the Antenuptial Agreement or the invalid Modification Agreement evinces the requisite intent for the lump sum alimony obligation to survive the former husband's death. Absent such an intent, New York law supports

---

[1]  The provision that the Antenuptial Agreement would "inure to the benefit and shall be binding upon the heirs, executors, administrators and assigns of the parties" does not conflict with this result. *See In re Westervelt*, 348 N.Y.S.2d 514, 517 (Sur. 1973) ("A mere statement in a contractual agreement to the effect that the provisions therein are binding upon the parties, their heirs and so forth is not in and of itself sufficient to survive the death of the contracting party . . . .").

the trial court's dismissal of the former wife's claim. *See, e.g., Matter of Benitez*, 594 N.Y.S.2d 413, 414 (1993) (affirming lower court's dismissal of petition because there was "no language in the stipulation which would support an interpretation that the obligation to pay monthly installments was to survive decedent's death.").

We therefore affirm.[2]

*Affirmed.*

DAMOORGIAN, J., concurs.
WARNER, J., dissents with an opinion.

WARNER, J., dissenting.

I dissent. Because our duty is to apply New York law, the case of *Gardner v. Zammit*, 128 N.Y.S.3d 383 (App. Div. 2020), is most closely on point, and governs this proceeding. I would reverse the final summary judgment.

In *Gardner*, the parties were divorced and entered into a settlement agreement with terms that the wife would pay maintenance to the husband which would terminate only upon his death. The agreement also had a provision making it binding upon "the parties, their heirs, executors, legal representatives, administrators and assigns." After the former wife died,

---

[2] The former wife last argues the trial court erred in dismissing her claim to homestead and other marital property and financial support from the former husband's estate because they were brought as probate claims. We disagree.

As argued by the former husband's estate, the former wife failed to plead these claims in her complaint, instead including them only in her motion for summary judgment. *See Danza v. Danza*, 727 N.Y.S.2d 468, 469 (App. Div. 2001) (holding the "trial court improperly awarded the plaintiff judgment on a cause of action which she failed to raise in her pleadings. . . ."); *Airport Plaza Ltd. v. United Nat'l Bank of Miami*, 611 So. 2d 1256, 1257 (Fla. 3d DCA 1992) (holding that it is "improper to introduce at trial issues not previously raised in the pleadings.").

Even had she properly pled her claims, the suit would nonetheless be improper in Florida. *See Prater v. Prater*, 491 So. 2d 1280, 1282 (Fla. 5th DCA 1986) ("It is well established in Florida that in an ex parte dissolution case where one party resides outside of Florida, and that party does not appear in the suit, the Florida court has jurisdiction solely to grant the divorce.").

her estate refused to make further payments to the former husband; he in turn sued the estate for the payments. *Id.*

The court determined that the estate was liable for the maintenance payments. It reasoned:

> A settlement agreement is a contract subject to principles of contract interpretation, and the court "should interpret the contract in accordance with its plain and ordinary meaning" (*Matter of Wilson*, 138 A.D.3d 1441, 1442 [4th Dept 2016] [internal quotation marks omitted]). In addition, "[t]he intent to vary the statutory and precedential preference of an end to maintenance payments upon death of the payor must be expressed clearly" (*Matter of Riconda*, 90 N.Y.2d 733). Here, neither party contends that the settlement agreement is ambiguous. We agree with plaintiff that the clause at issue unequivocally permits the termination of the maintenance obligation on the happening of one event only: the death of plaintiff. Further, the settlement agreement makes all provisions of the agreement binding on "the parties, their heirs, executors, legal representatives, administrators and assigns." Thus, plaintiff met his initial burden on the motion of establishing that the maintenance payments were intended to survive decedent's death and become an obligation of her estate . . . .

*Id.* at 384–85 (citations omitted).

Similarly, in this case, Article 6(iv)(g) provides that the two years of alimony payments shall terminate only upon the happening of one of two events: death of the former wife or her remarriage. Further, just as in *Gardner*, the contract stated that it was binding on the parties' executors and administrators. Therefore, the alimony provision is binding on the estate. I conclude that *Gardner* is controlling.

That Article 7 provides for support if the parties were still married at the husband's death does not prove that the parties did not intend the limited alimony upon divorce to continue in case of the former husband's death. Moreover, I believe the majority is mistaken in its reliance on the statement in the agreement that the wife has income ($20,000 per year in 1986, the date of the agreement) as creating a presumption that alimony payments should not continue after death. While New York cases discuss an independent source of support from the paying spouse as evidence that

the contract does not contemplate post-death continuation of maintenance payments, a spouse's own income is not the "independent provision" for the wife's support envisioned by the New York courts. *Matter of Riconda,* 90 N.Y.2d 733, explains the type of independent source of support necessary to conclude that the alimony provision does not survive the payor's death:

> Independent sources of support, from which an intent not to allow post-death continuance of maintenance payments may include the designation of a former spouse as irrevocable beneficiary on a life insurance policy and other distributions accruing upon the death of the payor spouse, or a lump-sum transfer in discharge of claims against the estate.

*Id.* at 739 (citations omitted). In this case, there was no provision for the former wife in the estate, or by way of insurance, or any other distribution for her benefit.

At the very least, in accord with *Riconda,* this matter should not have been decided by summary judgment, but should be remanded for further proceedings. As *Riconda* stated:

> In the present setting, the database surrounding and affecting the Riconda separation agreement in relation to the intent bearing on the contested provision is inconclusive or incomplete. That prevents summary resolution of this controversy in a fair, full and reliable fashion.

*Id.* at 741 (citations omitted).

*       *       *

**Not final until disposition of timely filed motion for rehearing.**