17 N.J. Super. 211 (1952)
85 A.2d 809
MARIE TOMSKY AND WALTER TOMSKY, HER HUSBAND, PLAINTIFFS-RESPONDENTS,
v.
MARY KACZKA AND JOHN KACZKA, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued December 10, 1951.
Decided January 3, 1952.
*213 Before Judges JACOBS, EASTWOOD and BIGELOW.
Mr. Harry Chashin argued the cause for the plaintiffs-respondents (Mr. Edmund Polonitza, attorney).
Mr. Elmer J. Bennett argued the cause for the defendants-appellants (Messrs. Patrick A. Dwyer, James P. Beggans and Milton A. Dauber, of counsel and on the brief; Messrs. Carpenter, Gilmour & Dwyer, attorneys).
The opinion of the court was delivered by EASTWOOD, J.A.D.
At a trial before the Hudson County Court, Law Division, the jury returned a verdict in favor of the plaintiff, Marie Tomsky, for $1,000, for personal injuries allegedly sustained in a fall on premises owned by the defendants, and in the sum of $500 to Walter Tomsky per quod. The defendants appeal from the ensuing judgment.
Approximately two weeks before the accident, Mrs. Kaczka telephoned Mrs. Tomsky, who was secretary of the Polish Insurance Lodge, requesting that she call at the Kaczka residence to collect the insurance premium. On December 13, 1949, Mrs. Tomsky went to a store near Mrs. Kaczka's residence and inquired of defendants' son as to the whereabouts of his mother. He told her that his mother was in the cellar washing clothes. Mrs. Tomsky proceeded to the front porch of the Kaczka residence where there were three doorways; *214 the left door led to the first floor tenant's apartment, the center door led to the cellar and the right door led to the Kaczka apartment on the second floor. Mrs. Tomsky observed that the door to the cellar was open and "the cellar was lit up." Without announcing her presence or requesting admittance, she entered upon the stairway leading to the cellar, when allegedly her "left shoe caught on a crack on the landing," precipitating her to the cellar. Plaintiff testified that she knew that defendants lived in the second-floor apartment and that she entered the cellar stairway unannounced, knowing that it did not lead to defendants' apartment.
There is no substantial dispute as to the factual situation, but rather the issue is addressed to the legal implications deducible therefrom.
Defendants' asserted grounds for reversal are: (1) that the plaintiffs' proofs fail to establish that the defendants had actual or constructive notice of the defective condition of the premises; (2) that there was no proof upon which the jury could have reasonably found that Mrs. Kaczka was an invitee, and (3) that the trial court erroneously denied their motion for a dismissal of the action.
We fail to find any evidence that the alleged defect in the landing of the stairs was known to the defendants or that it existed for a sufficient length of time that they ought to have acquired notice of it. The one witness produced by plaintiffs, Joseph J. Daly, testified that he observed no defect in the staircase prior to the incident of December 13, 1949, and Mrs. Tomsky failed to observe any defect prior to the incident in question. Plaintiffs argue that certain conditions of disrepair and deterioration take considerable time to develop and that the existence of the condition itself was sufficient to lend an inference that it existed for an adequate time to constitute notice to defendants. We have searched the record and fail to find proofs establishing that the alleged defective condition was the result of deterioration, arising out of decomposition, decay or some such time consuming *215 destruction, but find that at best, the proofs indicate a cracking, splintering, chipping, or physical displacement that might well have been the result of a sudden force immediately prior to Mrs. Tomsky's fall or concurrent therewith.
Mr. Justice Vredenburgh, in the case of Schnatterer v. Bamberger & Co., 81 N.J.L. 558 (E. & A. 1911), speaking for the court relative to conditions of stairs alleged to have been the result of long wear, said at p. 560:
"* * * Doubtlessly, the shoes upon the feet of countless numbers of persons were continually subjecting the brass nosing to wear and tear, and, of necessity at some time during such wear, a weakening of its fastenings to the step would occur before they became loosened. In the present instance, for aught that appears to the contrary, it may readily have happened that the act of the plaintiff in placing her weight upon the metal nosing was the first force to produce this loosened condition; but if not, the accident is no proof that the nosing piece had been in the condition testified to at a period so long before the accident as to charge the defendant with notice of it. There is nothing in the evidence to justify the inference that the company had, at any time before the accident, either knowledge or notice of such defect."
Similarly, in the matter sub judice, for aught that appears in the evidence, the crack in the landing of the staircase may have been occasioned by an incident immediately previous to the entrance of the plaintiff or by the act of her treading thereon itself, and without notice or knowledge on the part of the defendants.
"Generally, the condition which results in injury must either (a) have been, in fact, brought to the previous notice of the store operator (or owner of the premises), or, failing proof of actual notice, (b) have existed for so long a time as to be, in the exercise of reasonable care, discoverable and remediable before the occurrence of the injury. In the absence of such proof, the legal presumption of due care obtains." (Parenthesis ours.) Coyne v. Mutual Grocery Co., Inc., 116 N.J.L. 36, 38 (Sup. Ct. 1935); cf. Colligan v. 680 Newark Ave. Realty Corp., 131 N.J.L. 520 (E. & A. 1944); Oelschlaeger v. Hahne & Co., 2 N.J. 490, 495 (1949).
*216 Under the facts of this case, Mrs. Tomsky was asked to call at defendants' home in order to collect insurance premiums, but she did not call until approximately two weeks thereafter. She stated that she had never previously been to the Kaczka residence and that the purpose of her call was business.
"Those who enter the lands or premises of another are either invitees, licensees or trespassers. The first come by invitation, express or implied; the second are those who are not invited but whose presence is suffered; the third are neither invited nor suffered. The English cases limit the term `invitee' to those who were invited into the premises by the owner or occupier for some purpose, either business or of mutual interest; and those who are invited as guests, whether from benevolence or for social reasons, are not considered in law invitees but licensees. Latham v. R. Johnson, &c. (1913), 1 K.B. 398. The duty of an owner or occupier of premises towards invitees is to exercise reasonable care to have the premises in safe condition. The duty towards licensees is considerably less and obliges the host to give notice of unforeseen dangers such as traps, and the overall duty regarding trespassers amounts only to abstaining from willful or wanton injury." Lordi v. Spiotta, 133 N.J.L. 581, 584 (Sup. Ct. 1946).
In Restatement of the Law, Torts, sec. 343 (b), p. 940, it is stated:
"* * * a possessor of land is subject to liability to another as a business visitor only for such bodily harm as he sustains while upon a part of the land upon which the possessor gives the other reason to believe that his presence is permitted or desired because of its connection with the business or affairs of the possessor and which as such is held open to the other as a business visitor.

* * * * * * * *
* * * If the business visitor goes outside of the area of his business invitation, he becomes either a trespasser, a social guest or a bare licensee depending upon whether he goes thereon without the consent of the possessor or by the possessor's consent or permission given merely as a favor to him."
It has been consistently held that an owner's liability for the condition of his premises is co-extensive with his invitation, Ryerson v. Bathgate, 67 N.J.L. 337 (E. & A. 1902); Nolan v. Bridgeton and Millville Traction Co., 74 *217 N.J.L. 559 (E. & A. 1907); Phillips v. Library Co., 55 N.J.L. 307 (E. & A. 1893). Similarly, it has been held that in order to come within the protection of the general doctrine of invitation, it is incumbent upon plaintiff to show not only that entry was by invitation, but also that the injuries complained of were received while in that part of the premises into which the plaintiff was entitled to enter, and was using them in a manner authorized. Ryerson v. Bathgate, supra; Furey v. N.Y.C. & H.R.R.R. Co., 67 N.J.L. 270 (E. & A. 1902); Hickman v. Dutch Treat Restaurant, Inc., 3 N.J. 460 (1950); Standiford v. Bernhardt, 13 N.J. Super. 357, 362 (App. Div. 1951).
In our opinion, under the proofs, it does not appear that the status of the plaintiff was that of an invitee, but rather that of a licensee. While the plaintiffs rely greatly on the so-called "invitation" of the son, there is no evidence that he had any authority that was binding upon his mother.
The judgment is reversed. The cause is remanded for a new trial. Costs to abide the event.