28 N.J. Super. 436 (1953)
101 A.2d 38
ANN MARIE TAHAN, AN INFANT, BY HER GUARDIAN AD LITEM, GEORGE TAHAN, PLAINTIFF-APPELLANT,
v.
WAGARAW HOLDING COMPANY, AND BENGAR CORPORATION, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 16, 1953.
Decided November 30, 1953.
*438 Before Judges CLAPP, GOLDMANN and EWART.
Mr. Hyman W. Rosenthal argued the cause for appellant (Marcus & Levy, attorneys; Mr. Harry Chashin, of counsel and on the brief).
Mr. Samuel Doan argued the cause for respondents (Mr. Charles C. Stalter, attorney).
The opinion of the court was delivered by EWART, J.A.D.
This is an appeal from a judgment of involuntary dismissal entered at the close of plaintiff's case and on defendants' motion pursuant to R.R. 4:42-2 (b) (formerly Rule 3:41-2). The court's decision was based upon failure of the plaintiff's evidence to make out a prima facie case requiring consideration by the jury.
Plaintiff, a girl of the age of 18 years and some months, was employed by Hawthorne Footwear, Inc., a tenant on the third floor of an industrial brick building in the Borough of Hawthorne, which building was owned by the defendant Wagaraw Holding Company and managed and maintained by the defendant Bengar Corporation which also collected rents from the tenants. At about 12:15 P.M. on September 7, 1950, plaintiff, together with five or six other girl employees of Hawthorne Footwear, Inc., was eating lunch while *439 seated on the steps near the top of an iron fire escape attached to the outside of the building in which they were employed. A fellow employee, one Martha, who was also eating lunch, dropped a towel which landed on a sloping skylight below the second floor landing of the said fire escape; plaintiff volunteered to get the towel and for that purpose descended the fire escape, stepped upon or fell upon one of the glass panels of the skylight and crashed through the same to the first floor, suffering injuries, to recover for which she brought this suit. Whether she stepped upon the skylight, or while leaning from the stone slab to reach the towel, fell into the skylight, is not entirely clear. She testified as follows:
"A. I went down the stairs, walked on the slab. I went in to get the towel. That is all I remember.
Q. You stepped off the slab? A. Well, towards this way (indicating on the picture).
Q. Did you step off the slab? That is what I want to know. A. I can't recall.
Q. You do not know? All right. A. (There was no answer.)
By Mr. Chashin:
Q. What do you remember next, after that, Mrs. Tahan? A. Well, after that I just remember waking up in the hospital."
A description of the physical conditions of the building, the fire escape, and the practices prevailing with reference to the use thereof, would appear to be essential to a full understanding of the problems involved in this case. It appeared from the proofs, which included a series of nine photographs admitted in evidence and marked respectively Exhibits P-1 to P-9, both inclusive, that plaintiff's employer, Hawthorne Footwear, Inc., was a tenant on the third floor of the three-story brick building in question; that the building is something over 400 feet long and 45 or 50 feet in width; that plaintiff's employer was engaged in the manufacture of ladies footwear, employing approximately 50 girls and 25 men; that access to the third floor is had by means of stairways leading up from the street level inside of the front of the building; that annexed to the outside of the building is an iron fire escape with a landing opposite a doorway *440 leading into the third floor of the building where plaintiff was employed; that iron steps of the fire escape descend from the third floor landing to another landing midway between the second and third floors on the outside of the building; then another set of iron steps descend to a landing of the fire escape opposite a doorway leading into the second floor of the building; that from the second floor landing of the fire escape three steps descend to a flat stone or concrete slab which caps a parapet wall; and that to reach the ground by means of these fire escapes, one would be required to step from the said stone or concrete slab down a distance of approximately a foot, or less, onto the sloping roof of an adjacent one-story building; thence to walk along the sloping roof of the one-story building on the outside of the parapet wall a distance of 100 feet or more to another iron fire escape which descends from said roof down a set of iron steps into a back yard. The flat stone or concrete capping on the parapet wall above mentioned, and upon which one using the fire escape in descending from the third floor to the second floor would step before reaching the roof of the adjacent building, is located approximately six feet distant from the outside wall of the brick building to which the fire escape is attached. It is a brick parapet wall, topped or capped by terra cotta; runs parallel to the main wall of the building in which plaintiff was employed, about six feet distant therefrom; and extends some 24 inches in height above the roof of the adjacent building. Between this parapet wall and the main wall of the building in which plaintiff was employed is a sloping skylight consisting of glass panels about 22 or 24 inches in width and 72 inches in length which extend from the main wall of the building in which plaintiff was employed on a slope at a 45° angle to the parapet wall above mentioned. On the inside of the parapet wall, where the sloping skylight meets it, there is a gutter above which the parapet wall extends to a height of some 36 inches. This skylight, consisting of the glass panels mentioned, extends for a long distance, for something in excess of 100 feet, along the wall of the main building in *441 which plaintiff was employed and at the end thereof a solid wall extends across the space where the skylight ends, thus closing in the skylight area on one side by the brick wall of the main building; on the opposite side by the parapet wall above mentioned; and by solid walls at the end of the skylight area. Iron girders supporting the fire escape mentioned rest on this parapet wall and at the point where one descending the fire escape would step on the top of the parapet wall, the same has been partially cut away and capped by the flat slab of concrete or stone above mentioned so as to make an easy step down to the adjoining roof. The adjoining roof upon which one would walk to gain access to the iron fire escape leading from the second floor down to the ground is likewise sloped, although not at as steep an angle as the glass skylight on the opposite side of the parapet wall. The said roof is covered by tarpaper or other similar material, painted black, and the glass panels of the skylight have likewise been painted black, allegedly during the late war to prevent light shining through the same during night work. However, the photographs admitted in evidence and mentioned above show that there was no similarity in appearance between the roof covered with tarpaper above mentioned and the glass skylights, although of similar color, because the skylights slope at a steeper angle than does the roof and the panels of glass constituting the skylight are of a width of only 22 or 24 inches and are joined by metal ribs which project upward between each of the glass panels. In addition thereto, any one attempting to walk or travel along the glass skylight, if he were able to avoid falling through the same, would come to a blank wall over which he would have to climb to reach any given destination, whereas one could walk along the roof of the adjacent building, covered with tarpaper and painted black as aforesaid, without coming to any obstruction in going from the bottom of the fire escape extending from the third to the second floor of the building to the other fire escape leading from the second floor to the ground.
It appeared by plaintiff's proofs that she had been employed *442 on the third floor of the building mentioned since 1946 or 1947; that she and other of the girl employees frequently sat on the fire escape to eat their lunch during warm weather; but that the plaintiff had never been on the skylight prior to the day of the accident, nor had she ever used the fire escape for the purpose of entering the building from the ground or for the purpose of descending from the third floor to the ground. There was testimony, however, that maintenance men employed by the defendant Bengar Corporation made use of the fire escape in working in and about the building; that boys employed on the third floor by Hawthorne Footwear, Inc. occasionally used the fire escape to go out for coffee; and that occasionally, perhaps once a week or once in two weeks, persons driving trucks into the back yard were seen to use the fire escape to gain entrance to the upper floors of the building. It also appeared by the proofs that the Bengar Corporation, in charge of the maintenance of the building, had experienced some difficulty by reason of occupants or employees on the second and third floor tossing various things, including empty bottles, out the window which landed on the sloping skylight and broke the glass, and that, in connection therewith, the maintenance men employed by Bengar Corporation had patched the leaks in the skylight by using a jute membrane covered with a roofing cement. However, these patches did not cover the whole of the glass, but only the portion thereof where the leaks developed.
There was no evidence that the plaintiff and the other employees of Hawthorne Footwear, Inc., had ever received express permission to use the fire escape for the purpose of eating lunch during nice weather, nor was there any proof that such use had been forbidden them, although they had been using the fire escape for that purpose for some two or three years or more.
The proofs further disclosed that there were no notices or warnings of any kind posted to afford warning or notice of the existence of glass forming the skylight or indicating any danger in stepping on the skylight area, and the plaintiff *443 and her witnesses testified that the glass was painted black and that she was ignorant of the fact that it was a skylight.
It also appeared by the proofs that the fire escape was not leased to any tenant, but was for use of all of the tenants on the upper floors and was within the control of the owner and of Bengar Corporation which serviced the building for the owner.
Upon this state of facts, the issues to be determined at the trial, as set forth in the pretrial order, were:
(a) Negligence of the defendants, or either of them.
(b) Status of plaintiff, whether invitee, licensee or trespasser.
(c) Contributory negligence of the plaintiff, and
(d) Damages.
Did the plaintiff occupy the position of an invitee, or a licensee, or was she a trespasser? Former Chief Justice Brogan, in Lordi v. Spiotta, 133 N.J.L. 581, 584 (Sup. Ct. 1946), uses apt language in defining these three classes as follows:
"Those who enter the lands or premises of another are either invitees, licensees or trespassers. The first come by invitation, express or implied; the second are those who are not invited but whose presence is suffered; the third are neither invited nor suffered."
This definition was adopted by Judge Eastwood in Tomsky v. Kaczka, 17 N.J. Super. 211, 216 (App. Div. 1952).
Within the terms of the foregoing definition, and in view of the proofs before the court, we think it might well be said that plaintiff and some of her fellow employees had been in the habit for some time of sitting on the fire escape during nice weather to eat their lunches and that, while they never received an invitation or permission so to do, still their use of the fire escape for the purpose mentioned was suffered and permitted, and that the plaintiff therefore occupied the position of a licensee so far as concerns the use of the fire escape as a place upon which to eat her lunch. However, there was nothing in the proofs, either *444 directly or by inference from proven facts, that either the plaintiff or her fellow employees or any one else had been suffered or permitted to depart from the fire escape and trespass upon the sloping glass skylight beneath the fire escape, nor was it at all necessary or convenient to go upon the sloping skylight in descending from the third floor to the ground via the fire escape and the use of the roof of an adjoining building. Plaintiff had never been upon the skylight prior to the day of the accident complained of and we think that when she stepped upon or went upon the skylight, she exceeded the bounds of any possible license she may have enjoyed for the purpose of using the fire escape as a place upon which to sit while eating lunch and became a trespasser.
It is well settled that as a general rule the only duty owed by the owner or possessor of land with respect to trespassers is to refrain from acts willfully injurious and that he is under no liability for failure to exercise reasonable care for the protection of a trespasser. Hoberg v. Collins, Lavery & Co., 80 N.J.L. 425 (E. & A. 1910); Staub v. Public Service Rwy. Co., 97 N.J.L. 297, 299 (E. & A. 1921); Lordi v. Spiotta, 133 N.J.L. 581, 584 (Sup. Ct. 1946); Restatement, Torts, § 333.
And the same general rule applies to one who occupies the status of a licensee, i.e., the only duty of the owner or possessor of land to such licensee is to refrain from acts willfully injurious. Such owner is under no duty of reasonable care to such licensee. Phillips v. Library Co., 55 N.J.L. 307 (E. & A. 1893); Liveright v. Max Lifsitz Furniture Co., 117 N.J.L. 243, 244 (E. & A. 1936); Lordi v. Spiotta, supra; King v. Patrylow, 15 N.J. Super. 429 (App. Div. 1951); Boyd v. International Smelting & Rfg. Co., 22 N.J. Super. 1 (App. Div. 1952); 1 Stevenson on Negligence (1945), § 8, pages 147-148.
A recognized exception to these rules is that the owner or possessor of land must not create an entrapment to the danger of a licensee unless he discloses its existence or warns against its hazards. Otherwise stated, the owner or possessor *445 of land is under an obligation to observe reasonable care to avoid creating any condition upon the premises which to one of ordinary prudence and foresight could be reasonably held to be a dangerous instrumentality for harm. Phillips v. Library Co., supra; Morril v. Morril, 104 N.J.L. 557, 561 (E. & A. 1928); 1 Stevenson on Negligence, pages 147-148; Restatement, Torts, § 335.
Another exception to the general rules respecting liability to trespassers or licensees, having particular application to children of tender years, is that the possessor of land is liable for reasonably foreseeable injurious consequences arising out of the use of a dangerous instrumentality, or the creation of an artificially dangerous condition, where the owner or possessor of the land is aware of constant trespassing upon a particular place, or a limited area, and the use of the dangerous instrumentality, or the existence of the artificially created dangerous condition, is likely to cause death or serious bodily harm to such trespassers or licensees. Strang v. South Jersey Broadcasting Co., 9 N.J. 38 (1952); Harris v. Mentes-Williams Co., Inc., 11 N.J. 559 (1953); Restatement, Torts, § 339.
On defendants' motion for involuntary dismissal under R.R. 4:42-2 (b) (formerly Rule 3:41-2), or for judgment under R.R. 4:51, the court was bound to accept as true all evidence which supported plaintiff's case and to give her the benefit of all inferences which may logically and legitimately be drawn therefrom in her favor. Gentile v. Public Service etc. Transport, 12 N.J. Super. 45 (App. Div. 1951). However, granting plaintiff the benefit of that rule, we are of the opinion that, under the proofs in this case, when the plaintiff stepped upon or went upon the skylight she occupied the status neither of an invitee, nor that of a licensee, but became a trespasser to whom the defendants' only duty was to refrain from acts willfully injurious. The fact that she and some of her co-employees were suffered to sit upon the fire escape for the purpose of eating their lunches no doubt gave her the status of a licensee while on the fire escape for the purpose mentioned, but that gave her no license and certainly *446 no invitation to go upon the skylight, a place where she had no right to be. Cf. Liveright v. Max Lifsitz Furniture Co., supra, at p. 244, and Tomsky v. Kaczka, supra, at pp. 216 and 217. In any event, whether she entered upon the skylight as a trespasser or as a licensee, the applicable legal principles respecting responsibility of the owner of the property would be the same.
Nor do we think plaintiff's case falls within the principle of Strang v. South Jersey Broadcasting Co., supra, or Harris v. Mentes-Williams Co., Inc., supra. She was not a child of tender years, but was over 18 years of age; neither she nor her co-employees were accustomed to going upon or trespassing upon the skylight in question; nor do we regard the skylight as a dangerous instrumentality or as constituting an artificially dangerous condition created by the defendants.
Judgment affirmed.