820 A.2d 669 (2003)
359 N.J. Super. 484
Elizabeth P. WELLINGTON, Plaintiff-Appellant,
v.
ESTATE of Thomas D. WELLINGTON, Deceased, Margaret W. Constantine, Margaret W. Wellington, and Morgan Guaranty Trust Company of New York (now known as JP Morgan Chase Bank), Executors, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued March 24, 2003.
Decided April 22, 2003.
*670 Robert D. Borteck, Morristown, argued the cause for appellant (Edwards & Angell, attorneys; Mr. Borteck and Richard D. Sanders, on the brief).
Gerard G. Brew, Newark, argued the cause for respondents (McCarter & English, attorneys; Myrna L. Wigod, of counsel and on the brief; Alison Coriaty O'Sullivan, also on the brief).
Before Judges PETRELLA, LINTNER and BILDER.
The opinion of the court was delivered by PETRELLA, P.J.A.D.
Plaintiff Elizabeth P. Wellington sued the executors of the estate of her former husband, claiming that under the terms of the property settlement agreement that she and her former husband entered under New York law, the estate was obligated to continue paying her support until her death. The judge granted summary judgment to defendants, finding that the property settlement agreement encompassed all of plaintiff's claims against the estate when it included an obligation by her former husband to make a lump-sum bequest in his will to her, which he did.
Plaintiff appeals, claiming that the judge erred in not ordering the estate to continue paying her support until her death, and in ruling on the summary judgment motion *671 prior to completion of discovery. We disagree and affirm. The judge's findings were appropriate, and further discovery was not necessary.
Plaintiff married Thomas on November 18, 1966, and had one child who was born in 1967. They were divorced in Mexico on August 25, 1970. On August 18, 1970, they entered into a settlement agreement which, according to the terms of the divorce decree, survived the divorce decree, and was to be governed by the laws of New York. Section 5 of that agreement stated:
The Husband shall pay to the Wife for the support and maintenance of her and the Child, the following:
(a) (i) the sum of $27,500 per annum until July 31, 1978, and (ii) the sum of $22,500 per annum until May 31, 1985, and (iii) the sum of $18,500 per annum thereafter, provided that if the parties are divorced and the Wife remarries, the obligations of the Husband to make the annual payments under this subdivision (a) shall cease as of the Wife's remarriage.
Paragraph 6 of the agreement stated:
(a) As a full settlement of the Wife's property rights in the estate of the Husband, and consistent with the principles enunciated in Revenue Ruling 60-160, 1960-1 C.B. 374, the Husband shall forthwith make and keep in full force and effect until his death a Will bequeathing and devising to the Wife, if she survives him and has not remarried, (i) the sum of $100,000 in the event that the Husband shall die before SARAH'S eighteenth (18th) birthday, (ii) the sum of $50,000 if the Husband shall die subsequent to SARAH'S eighteenth (18th) birthday.
Thomas died testate on July 19, 2000, a resident of Princeton. His May 10, 1996 will complied with his obligation to make the $50,000 bequest to plaintiff as required under the property settlement agreement.
In March 2001, Elizabeth Wellington executed a proof of claim against the estate of her former husband, Thomas, claiming that the estate was liable for support payments. After the co-executors of the estate rejected plaintiff's claim, she filed suit in the Chancery Division, Probate Part, asserting her right to support from the estate and its executors, Margaret W. Constantine, Margaret W. Wellington and Morgan Guaranty Trust Company of New York (now known as J.P. Morgan-Chase Co.). The dispute was sua sponte transferred to the Family Part.
Thereafter, defendants moved to dismiss, or in the alternative, for summary judgment. The judge granted summary judgment to defendants on April 12, 2002. Plaintiff filed a timely notice of appeal.

I.
Plaintiff first argues that the separation agreement with her former husband bound his estate to continue support payments to her after his death, and thus the judge erred in granting summary judgment to the estate. Defendants acknowledge the agreement, but assert that its terms did not contemplate the continuation of support to Elizabeth after Thomas's death. After consideration of the record in the light most favorable to the plaintiff, as the opponent of the motion, and resolving all doubts against the movant, Ruvolo v. American Cas. Co., 39 N.J. 490, 499, 189 A.2d 204 (1963), we conclude that the motion judge correctly determined that the intent of the agreement is clear from its terms and that summary judgment to defendants was plainly warranted. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995); R. 4:46-2.
*672 It is not disputed that under New York law the obligation to pay alimony terminates upon the death of the payor, unless the parties agree otherwise. Plaintiff, however, contends that the scenario in this case is more like Cohen v. Cronin, 39 N.Y.2d 42, 382 N.Y.S.2d 724, 346 N.E.2d 524 (1976), where the parties entered into a separation agreement that provided payments of $400 each month to the wife "until she shall remarry or expire." Id. at 44, 382 N.Y.S.2d at 725, 346 N.E.2d at 526. The Cohen agreement required the husband to convey the marital residence to the wife and obligated her to pay all the carrying costs of the home. In addition, the agreement recited that the parties had taken into consideration that the wife was not employed and that she accepted the provisions made for her in full satisfaction of her support and maintenance. The husband died two months after the execution of the agreement, while the parties were still married and living apart. His widow sought to charge the estate with the obligation to continue to make the monthly payments. Ibid. The Cohen court stated:
We start with the well-accepted proposition that a husband's obligation to support his wife terminates with the husband's death. However, the husband might, by agreement, impose upon his estate a duty to make alimony or support payments after his death. In order to bind the estate, a separation agreement must either specifically provide for the continuation of payments or evince, from the terms of the agreement read as a whole, a clear intention that support payments continue, notwithstanding the husband's death. While explicit agreement by the parties is obviously much to be preferred, where such explicit agreement is lacking, the court must read the document as a whole in its total context and examine each of its provisions in order to ascertain the overriding intention of the parties. Since the burden of proof is by the claimant, the wife must establish, to the satisfaction of the court, that the parties actually intended to extend the obligation to make support payments beyond the husband's lifetime.
[Id. at 45-46, 382 N.Y.S.2d at 726, 346 N.E.2d at 526-527 (citations omitted).]
Cohen concluded that the provision of the agreement that provided that support payments continue to the wife "until she shall remarry or expire" without any qualifying or limiting language, obligated the husband's estate to make the payments for the wife's lifetime. Id. at 46, 382 N.Y.S.2d at 726, 346 N.E.2d at 527. Furthermore, the agreement noted that the wife was not employed and that the payments would be the wife's sole source of income to pay the ongoing costs of the marital home she had obtained under the agreement. The court also noted that the wife waived all of her other rights to share in her husband's estate, and so it was only reasonable that, in consideration for the release of her other marital rights, she acquired the security of having support payments made during her lifetime. Ibid.
Plaintiff claims in the present case that the clear language of the separation agreement provides for termination of the husband's payments only upon her remarriage and "where, as here, there is no `qualifying or limiting language,' Cohen obligates the Decedent's estate to continue support and maintenance payments `for the lifetime of the wife.'" She argues that the judge here failed to properly apply the rule set forth in Cohen.
However, Cohen is readily distinguishable. The agreement in Cohen provided that support would continue during the wife's lifetime or until her remarriage, whereas the agreement here stated only that support would terminate upon plaintiff's *673 remarriage. Plaintiff argues that the fact that the agreement does not refer to the death of the payor as a terminating event supports her claim. However, that argument overlooks the reality that under New York law, the obligation terminates upon the death of the payor, unless otherwise provided. Id. at 45, 382 N.Y.S.2d at 726, 346 N.E.2d at 526-527.
Moreover, the separation agreement in Cohen not only created a financial liability for the wife by giving her the house and financial obligations related thereto, but also expressly recognized that she was not employed. The agreement thus contemplated that the husband's payments would be the wife's sole means of support. The agreement here specifically states that both parties were free to engage in any employment. Finally, the agreement in Cohen did not require the husband to maintain a death benefit for the wife as the agreement did here. This is a significant difference.
The general law stated in Cohen was similarly expressed in In re Riconda, 90 N.Y.2d 733, 737-738, 665 N.Y.S.2d 392, 395-396, 688 N.E.2d 248, 251-252 (1997) (citations omitted):
The intent to vary the statutory and precedential preference of an end to maintenance payments upon death of the payor must be expressed clearly. Indeed it has been said that a specific, affirmative expression is required for an estate to become liable to make continued maintenance payments to the recipient spouse upon the death of the payor spouse....
Absent a specific statement of intent referencing maintenance, all provisions of a document should be considered together and in the context of surrounding circumstances to determine whether the payor spouse actually intended that an estate be charged with the obligation to continue maintenance payments to a recipient spouse after the death of the payor spouse.... "The agreement itself, or, if it be ambiguous, the terms thereof when viewed in the light of surrounding circumstances, must unequivocally speak out for the continuance of the periodic payments following the death of the husband, or the parties will not be held to have so intended." (2 Foster, Freed and Brandes, Law and the Family New York § 12:58, at 1003 [2d ed]. [emphasis added]).
Riconda also noted that: "Independent sources of support, from which an intent not to allow post-death continuance of maintenance payments [can be inferred] may include the designation of a former spouse as irrevocable beneficiary on a life insurance policy and other distributions accruing upon the death of the payor spouse, or a lump-sum transfer in discharge of claims against the estate." Id. at 739, 665 N.Y.S.2d at 396-397, 688 N.E.2d at 252-253 (citations omitted).
The separation agreement in Riconda provided for support payments until the wife's death or remarriage, but it was silent as to the consequence of his predeceasing her. Therefore, in order to discern the parties' intent, the court had to look at the whole document and particularized circumstances at the time the agreement was made. Id. at 738-739, 665 N.Y.S.2d at 396, 688 N.E.2d at 252. Because the record below was incomplete in this regard, summary judgment could not be granted. Id. at 740-741, 665 N.Y.S.2d at 397-398, 688 N.E.2d at 253-254.
Here, plaintiff contends that the judge erred in construing the bequest under her former husband's will as a substitute for continued payment of support and maintenance. Defendants argue that this provision, read in conjunction with the other *674 support provisions, makes the agreement plain within its four corners, and thus, resort to examination of the circumstances surrounding the agreement is irrelevant.
As noted above, the court in Riconda stated that a provision for a lump-sum payment in a will in discharge of claims against the estate, or a provision making a former spouse the irrevocable beneficiary of life insurance, are evidence of intent that support was not to continue past the death of the payor spouse. Id. at 739, 665 N.Y.S.2d at 396-397, 688 N.E.2d at 252-253. Similarly, a provision in a separation agreement to make the supported spouse an irrevocable beneficiary of the payor's life insurance policy was evidence that the parties did not intend the payor's estate to be bound to continue the payments. In re Benitez, 191 A.D.2d 793, 594 N.Y.S.2d 413 (N.Y.App.Div.), leave to appeal denied, 82 N.Y.2d 656, 602 N.Y.S.2d 804, 622 N.E.2d 305 (1993). Conversely, in Cohen, the lack of a life insurance or will provision was taken as evidence that the parties intended support to continue post-death. Cohen, supra (39 N.Y.2d at 46, 382 N.Y.S.2d at 726, 346 N.E.2d at 527).
The judge here found that the separation agreement required the former husband to maintain a death benefit for plaintiff in his will and that this bequest was intended to take the place of support payments after his death. While plaintiff recognizes that, where the bequest is intended as a substitute for "support and maintenance," there is no continuing right to receive support, she argues that the provision here was not a substitute for continued support and maintenance.
The paragraph at issue begins: "As a full settlement of the Wife's property rights in the estate of the Husband, and consistent with the principles enunciated in Revenue Ruling 60-160 ..." This paragraph requires the husband to make and keep a will bequeathing to plaintiff, if she survives him, $100,000 if he dies before their child turned eighteen, and $50,000 thereafter.
Plaintiff emphasizes the word "property rights" to argue that the bequest was not a substitute for continued support and maintenance payments but pertains to the wife's property rights in the husband's estate. She cites three cases, In re Phinney, 251 A.D.2d 1048, 673 N.Y.S.2d 621 (N.Y.App.Div.1998), In re Benitez, supra (594 N.Y.S.2d at 413), and In re Bardol's Estate, 51 A.D.2d 341, 381 N.Y.S.2d 558 (N.Y.App.Div.1976), in which the wife received a lump-sum payment on the death of the husband and the husband's estate was relieved from continuing support, but she argues that in each of those cases the record made it clear that the lump sum payment was a substitute for the support paid during the husband's lifetime, not a payment in settlement of "property rights."
Plaintiff's distinction lacks merit. The provision here states that the payment of what turned out to be $50,000 was "as a full settlement of the Wife's property rights in the estate." Plaintiff argues: "A property settlement is clearly distinguishable from support and maintenance." Apparently, plaintiff is trying to claim that the "property rights" referred to were in settlement of her equitable distribution rights at the time of their divorce. However, that argument is unavailing, given that paragraph 3(b) states: "In settlement of the Wife's property claims against the Husband, the Husband shall pay to the Wife $52,500 within 10 days from the execution of the Agreement." The only "property right" plaintiff could have in the estate is based on the husband's continuing obligation to support her. The paragraph *675 clearly states that in settlement of that right, she will receive $50,000.
Further evidence supporting this interpretation can be found in the fact that the $50,000 is payable to her only if she survived her former husband. If she had property due her as part of equitable distribution, it would have been due to her regardless of the husband's death and payable to her heirs. Instead, she must be alive to obtain the bequest, which indicates it was in lieu of any other support.
Additional indicia of this is that the amount of the bequest was tied to child support for their daughter, Sarah. After Sarah's eighteenth birthday, the bequest was reduced from $100,000 to $50,000, which indicates that the bequest was intended to satisfy any continuing child support obligations the estate may have, and concomitantly, the estate's obligations to plaintiff.
Defendants also contend that the reference to Revenue Ruling 60-160, 1960-1 C.B. 374 supports their contention that the $50,000 was a substitute for support and maintenance payments. In that ruling, the IRS was asked whether an indebtedness arising from a property settlement agreement incorporated into a divorce decree was deductible from the gross estate of a decedent. The question arose when the decedent had entered into a property settlement agreement in which he agreed to pay his former wife a specified sum during his life and to make a will leaving her one-third of his estate at his death. The IRS ruled that:
in a case in which the divorce court has power to decree a settlement of all property rights or to vary the terms of a prior settlement agreement, and does approve the agreement, any indebtedness arising out of such settlement is not considered to be founded upon a promise or agreement but, rather, it is considered to be founded upon such court decree and is therefore, an allowable deduction from the gross estate in the amount of such indebtedness. If the court does not have the power to disregard the provisions of a previously existing property settlement agreement, a deduction is allowable only to the extent that the transfer does not exceed the reasonable value of the support rights of the wife.
[Rev. Rul. 60-160, 1960-1 C.B. 374, 1960 WL 12744 (IRS RRU) (emphasis added).]
Plaintiff argues that the mention of the revenue ruling "demonstrates nothing more than the Decedent's desire to obtain an estate tax deduction for the bequest to the Plaintiff. The mention of the Revenue Ruling does not negate the language of the separation agreement indicating that the $50,000 payment was in settlement of property rights (not rights to support and maintenance)."
We disagree with plaintiff's interpretation. Whether the estate received an estate tax deduction was not dependent upon whether this language was included in the agreement. Moreover, her second argument simply relies on her argument that this provision was in settlement of her "property rights" not her right to support and maintenance. As previously discussed, this term was used in settlement of her "property rights" in the estate, which consisted only of her claim for support. Her "equitable distribution" rights had already been satisfied.
There would be no reason to mention the revenue ruling in the agreement except to reference the last part of the ruling, which says a "deduction is allowable only to the extent that the transfer does not exceed the reasonable value of the support rights of the wife." The entire *676 revenue ruling arose from a question based upon an agreement that the husband provide for the former wife in his will. The ruling does not specifically say that the agreement was for the wife's continued support, but the IRS anticipated that it was, and specified that the amount deducted from the estate could not exceed the reasonable value of the support rights of the wife. Therefore, reference to the revenue ruling further supports defendants' position that the monetary provision was made to satisfy any support claim past his death.
Plaintiff also argues that she is entitled to continued support based on the language in the Mexican divorce decree that the settlement agreement "shall be binding and conclusive on the parties for all times." Plaintiff's argument would mean that none of the obligations in the agreement ever cease. That interpretation is contrary to common sense and we do not accept it.
Because the agreement is unambiguous within its four corners, the judge did not err in not considering all of the circumstances surrounding the making of the settlement agreement. "[E]xtrinsic and parol evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face." Intercontinental Planning Ltd. v. Daystrom, Inc., 24 N.Y.2d 372, 379, 300 N.Y.S.2d 817, 822, 248 N.E.2d 576, 580 (1969) (citations omitted). And, where there is no ambiguity, the surrounding circumstances need not be addressed. Riconda, supra (90 N.Y.2d at 738, 665 N.Y.S.2d at 396, 688 N.E.2d at 252).
Plaintiff argues that paragraph 11 of the agreement supports her argument that the agreement is ambiguous.[1] We disagree. That paragraph makes clear that except for the payments to Sarah in paragraph 6, each party waived all claims against the other.
Simply stated, the intent of the separation agreement is unambiguous and evident within its four corners. It provided for plaintiff to receive $50,000 (after Sarah reached age eighteen) upon her former husband's death in satisfaction of any claim for continued right to support. Thus, summary judgment was properly granted to defendants.

II.
In plaintiff's second point, she argues that the judge erred in not ordering defendants to establish a reserve fund, see Cohen, supra (382 N.Y.S.2d 724, 346 N.E.2d at 528), from which to pay her continued support. In light of our conclusion we need not reach this argument because decedent's estate does not have a continuing duty to provide for plaintiff.

III.
In her final point, plaintiff argues that summary judgment was premature because she was not afforded opportunity through discovery to demonstrate that the circumstances surrounding her divorce *677 were substantially identical to those in Cohen. Defendants reply that no discovery was needed.
Generally, summary judgment is inappropriate prior to the completion of discovery. Velantzas v. Colgate-Palmolive Co., Inc., 109 N.J. 189, 193, 536 A.2d 237 (1988). However, a plaintiff "has an obligation to demonstrate with some degree of particularity the likelihood that further discovery will supply the missing elements of the cause of action." Auster v. Kinoian, 153 N.J.Super. 52, 56, 378 A.2d 1171 (App.Div.1977).
Preliminarily, we note that plaintiff did not object in the trial court to proceeding without discovery, and to the contrary, contended that the separation agreement was plain on its face. She submitted statements of material fact and a supporting brief, as did defendants. Plaintiff does not allege that there are any facts in dispute. She had full knowledge of whatever circumstances surrounded the making of the agreement and does not explain from what sources additional discovery would have been available and pertinent. Nor does she explain why she did not submit any certifications regarding the circumstances prior to the summary judgment hearing.
The outcome of this dispute turns on the construction of the settlement agreement. Because the agreement was clear, resort to extrinsic evidence was not necessary. No material issues of fact were in dispute. Therefore, the judge did not err in granting summary judgment without allowing discovery. See Brill, supra (142 N.J. at 540, 666 A.2d 146).
Affirmed.
NOTES
[1] Paragraph 11 states:

Except as otherwise provided in paragraph 6 above, each party hereby releases and relinquishes any and all claims and rights that he or she may have had, now has, or may hereafter acquire, to share in any capacity or to any extent whatsoever in the estate of the other party upon the latter's death, whether by way of statutory allowance or distribution in intestacy, or election to take against the other party's Last Will and Testament under Section 5-1.1 of the Estates, Powers and Trusts Law of the State of New York, or of all other similar or related rights under the law of any other state, territory or foreign country, as such laws exist or may hereafter be enacted or amended.