**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3935-23

KONSTANTINE ZOGRAFOS and
ANGELA ZOGAFROS, husband
and wife,

     Plaintiffs-Appellants,

v.

ESTATE OF NANCY VOTRA,
CYPREXX SERVICES, LLC,
SPECIALIZED LOAN SERVICING,
LLC, and THE BANK OF NEW YORK
MELLON, f/k/a THE BANK OF NEW
YORK, AS TRUSTEE FOR THE
CERTIFICATE HOLDERS OF
THE CWABS, INC. ASSET-BACKED
CERTIFICATES, SERIES 2006-22,

     Defendants-Respondents.

_____

Submitted December 9, 2025 – Decided December 26, 2025

Before Judges Susswein and Chase.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-1165-22.

KG Law Group, LLC, attorneys for appellants (Christopher K. Koutsouris, on the brief).

Weber Gallagher Simpson Stapleton Fires & Newby LLP, attorneys for respondents Cyprexx Services, LLC (Diane B. Carvell, on the brief).

Elyse N. Cohen (Nelson Mullins Riley & Scarborough LLP), attorney for respondents Specialized Loan Servicing, LLC and The Bank of New York Mellon, as Trustee for the Certificate Holders of the CWABS, Inc. Asset-Backed Certificates, Series 2006-22.

Law Office of Burke & Potenza, PA, attorneys for respondent Estate of Nancy Votra (Walter H. Schneider, Jr., on the brief).

PER CURIAM

In this premises liability action, plaintiffs Konstantine and Angela Zografos appeal from two Law Division orders granting summary judgment to defendants Estate of Nancy Votra, Bank of New York Mellon, Specialized Loan Servicing, LLC, and Cyprexx Services, LLC. We affirm.

I.

We set forth the following facts viewing all evidence and inferences in the light most favorable to plaintiff, the non-moving party.[1] See Crisitello v. St.

---

[1] We refer to Konstantine Zografos as plaintiff in the opinion as Angela Zografos's claims are per quod only.

Theresa Sch., 255 N.J. 200, 218 (2023). In 2006, Nancy Votra executed a mortgage securing a note covering real property on West Calabreeze Way in Little Egg Harbor ("property"). The mortgage was assigned to defendant Bank of New York Mellon ("BNYM").[2] In 2018, Nancy Votra passed away; per her Last Will and Testament, Holly McNabb and Heather Shwom were appointed co-executors of defendant the Estate of Nancy Votra. Thereafter, the mortgage entered default and BNYM initiated a foreclosure action in July 2019.

In August 2019, the estate initiated eviction proceedings against Nancy Votra's live-in boyfriend because he refused to leave the property or pay rent. After being evicted, McNabb and Shwom knew that the ex-boyfriend would jump the fence and enter the backyard of the property.

In June 2021, the Chancery Division entered a Foreclosure Judgment in favor of BNYM, and a Sheriff's sale was scheduled for September 7, 2021.

Defendant, Specialized Loan Servicing, LLC ("SLS"), was enlisted by BNYM as a servicer to "inspect the property . . . for vacancy[,] [a]nd once it's determined that its vacant, . . . take steps through third-party vendors to secure the property." Accordingly, SLS hired defendant Cyprexx Services, LLC

---

[2] The mortgage was assigned to BNYM "solely as trustee for the benefit of the certificate[ ]holders of the CWABS Inc. asset-backed certificates, series 2006-22."

("Cyprexx") to secure and inspect the property. In return, Cyprexx sent orders to its third-party vendors with instructions to: (1) confirm occupancy; (2) complete a damage checklist; (3) verify the property was secure; and (4) take a full set of interior and exterior photos. The vendors reported to Cyprexx that there was significant damage to the property and that the property was not secure and recommended additional services to secure the property.

The Noble Group, LLC ("Noble"), an entity that was contemplating purchasing the property at the Sheriff's sale, hired plaintiff as an independent contractor to inspect the property and complete a checklist of needed repairs. According to plaintiff, he performed over one thousand jobs for Noble.

On September 1, 2021, plaintiff went to the property. Prior to arriving at the property, plaintiff did not inform anyone of his intention to inspect the property, and he was unaware whether Noble informed anyone of his inspection. Plaintiff testified he never contacted a property owner to seek permission to enter a property.

Upon arrival, plaintiff "could tell that the property was vacant." Plaintiff noted "there was a lock on the front door[,]" but "the gate was wide open." Furthermore, plaintiff admitted there may have been signage at the property although he did not stop to read them.

4

Notably, Shwom, testifying on behalf of the estate, stated there were multiple signs posted on the property, and showed a photo of a sign which was described as follows: "'Warning' in black writing, there's an underline; underneath it says[,] 'Private Property,' 'private property' is underlined, and underneath that it says[,] 'Keep Out.'" Shwom was unsure whether the signs were still up when plaintiff went to the property.

Plaintiff entered the property through an open gate on the front left side of the property. Once in the backyard, plaintiff identified wooden stairs that ran parallel to the bulkhead and down towards a dock. After viewing the stairs for approximately thirty-seconds from above, plaintiff thought everything looked sturdy.

In his deposition, plaintiff explained the event which allegedly caused his injuries:

> So I had taken a few steps down and I suddenly felt the floor give way. And I was significantly high in the ground, so my arm was – so as I started to come down, I had my – I was walking, taking pictures of the bulkhead that was on the opposite side of me. I took a few steps down, I suddenly felt the floor just give out, and my shoulder – my – I guess instinctively I put my arm to grab the railing. And the railing is what kept me held up. From there I – once that collapsed, I was able to pull myself back up and then climb up the bulkhead to get out. And I had noticed that the step itself didn't break, it actually came undone. So the step itself was

> still complete. It didn't break, it didn't crack, it was still a complete step.

Plaintiff then pulled himself up and over the railing and climbed up the bulkhead. Plaintiff recalled "feeling a rush of pain[]" immediately after the fall. Thereafter, plaintiff called 9-1-1, was taken in an ambulance, treated for his injuries at a hospital, and released the same day.

Following the incident, plaintiff was treated for almost a year by Rothman Orthopedics, and a physical therapist, whom he saw two or three times a week. Following treatment at Rothman Orthopedics, plaintiff was referred to another doctor, who performed shoulder surgery. Following surgery, plaintiff received physical therapy treatment.

In June 2022, plaintiffs filed suit seeking damages from the estate, Cyprexx, SLS, and BNYM (collectively "defendants") for injuries sustained at the property.

In December 2023, the estate moved for summary judgment, which plaintiffs opposed. That same month, the court extended the discovery end date ("DED") by an additional one-hundred-and-twenty days, to May 7, 2024. Notably, the court ordered, inter alia, "[p]laintiffs to serve expert report(s) by March 15, 2024[.]" (Emphasis added).

On April 12, 2024, the court heard oral argument on the estate's summary judgment motion. The court, after "find[ing] that the plaintiff was a trespasser within the meaning of the law[,]" granted the estate's motion. The court commented that summary judgment was applicable to all defendants "because the same theory would go to anybody who was involved in this case."

In light of the court's comments, plaintiffs filed a notice of appeal, and we issued a non-finality letter to plaintiffs and then dismissed plaintiffs' appeal without prejudice. Konstantine Zografos and Angela Zografos v. Estate of Nancy Votra, Cyprexx Services, LLC Et.al., No. A-002949-23 (App. Div. June 26, 2024).

In May 2024, Cyprexx, SLS, and BNYM each filed for summary judgment. The court held oral argument on defendants' motions in July. After finding no special relationship existed between plaintiff and defendants, the court granted summary judgment in favor of defendants.

This appeal followed.

## II.

We review a summary judgment determination de novo. Comprehensive Neurosurgical, P.C. v. Valley Hosp., 257 N.J. 33, 71 (2024). Applying the same standard as that employed by the trial court, we review the record to determine

whether there are material factual disputes and, if not, whether the undisputed facts viewed in the light most favorable to plaintiff, as the non-moving party, nonetheless entitle defendant to judgment as a matter of law. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). We owe no deference to the trial court's legal analysis. See Palisades at Fort Lee Condo. Ass'n v. 100 Old Palisade, LLC, 230 N.J. 427, 442 (2017) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Township of Manalapan, 140 N.J. 366, 378 (1995)).

## III.

### A.

On appeal, plaintiff contends the court erred by granting summary judgment before discovery ended and because there were genuine issues of material fact in the record concerning whether: 1) plaintiff was a trespasser or a discovered trespasser; 2) the property was abandoned; and 3) there were dangerous conditions existing at the property which were foreseeable.

To establish a negligence claim, a plaintiff must prove defendant: (1) owed a duty of care; (2) breached that duty; (3) the breach proximately caused the plaintiff's injury; and (4) damages. Townsend v. Pierre, 221 N.J. 36, 51 (2015) (citing Polzo v. Cnty. of Essex, 196 N.J. 569, 584 (2008)). The plaintiff bears the burden of proving negligence. See Reichert v. Vegholm, 366 N.J.

Super. 209, 213 (App. Div. 2004). In sum, the plaintiff "must prove that unreasonable acts or omissions by the defendant proximately caused [their] injuries." Underhill v. Borough of Caldwell, 463 N.J. Super. 548, 554 (App. Div. 2020).

Whether a duty to exercise reasonable care exists is "a matter of law properly decided by the court . . . and is largely a question of fairness or policy." Chen Lin Wang v. Allstate Ins. Co., 125 N.J. 2, 15 (1991). Conversely, questions of breach, causation, and damages are reserved for juries to determine. See Morris v. T.D. Bank, 454 N.J. Super. 203, 209 (App. Div. 2018) (quoting Jerkins v. Anderson, 191 N.J. 285, 305 (2007)) ("whether the duty was breached is a question of fact."); Maison v. NJ Transit Corp., 460 N.J. Super. 222, 234 (App. Div. 2019) (quoting Scafidi v. Seiler, 119 N.J. 93, 101 (1990)) ("proximate cause is a factual issue, to be resolved by the jury . . . .").

Where, as here, "a person alleges that a landowner has acted negligently, the existence of a duty . . . is generally governed by the status of the third person—guest, invitee, or trespasser—particularly when the legal relationship is clearly defined." Robinson v. Vivirito, 217 N.J. 199, 209 (2014) (citing Monaco v. Hartz Mountain Corp., 178 N.J. 401, 414-15 (2004)). When the legal relationship between the parties is not clearly defined, other factors influence

A-3935-23

the analysis, including: (1) knowledge of circumstances that may cause harm to another, (2) the relationship of the parties, (3) the nature of the risk, (4) the opportunity to exercise care, and (5) the public interest. Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 438-39 (1993); See also Clohesy v. Food Circus Supermarkets, 149 N.J. 496, 502 (1997); Jerkins, 191 N.J. at 295 (2007).

Although plaintiff argues a Hopkins analysis is warranted under these facts, our Supreme Court has clarified that such analysis is only necessary insofar as "the status of the plaintiff, vis-à-vis a landowner, does not fall into one of the pre-determined categories . . . " under common law—invitee, licensee, or trespasser. Rowe v. Mazel Thirty, LLC, 209 N.J. 35, 44 (2012). Where "the legal relationship [between the parties] is clearly defined, the common law classifications can be useful in determining the existence and scope of the duty of care owed." Clohesy, 149 N.J. at 502.

Applying the foregoing principles, we conclude the court correctly granted summary judgment to all defendants. First, the legal relationship between plaintiff and the estate is clearly defined. As our Court has stated,

> The actual categories — invitee, licensee, and trespasser — have been described as follows. The invitee comes by invitation, express or implied, generally for some business purpose of the owner. Lordi v. Spiotta, 133 N.J.L. 581, 584 (Sup. Ct. 1946). The licensee is permitted to come upon the property,

and does so for his own purposes. W. Page Keeton et al., Prosser and Keeton on Torts § 60, at 412 (5th ed. 1984). The trespasser is "neither invited nor suffered." Lordi, 133 N.J.L. at 584.

[Rowe, 209 N.J. at 43.]

Plaintiff was a trespasser—he received no invitation or approval to come see the property, nor did he even attempt to get permission. See Restatement (Third) of Torts: Liability for Physical and Emotional Harm, § 50 (Am. L. Inst. 2012) ("[a] trespasser is a person who enters or remains on land in the possession of another without the possessor's consent or other legal privilege.").

Accordingly, the duty owed by the estate to plaintiff is "relatively slight[,]" and extends a "duty to warn [plaintiff] only of artificial conditions on the property that pose a risk of death or serious bodily harm." Hopkins, 132 N.J. at 434 (citing Renz v. Penn Cent. Corp., 87 N.J. 437 (1981)); see also Restatement (Second) of Torts, § 337 (Am. L. Inst. 1965). Defendants only owed a duty to refrain from willfully injuring plaintiff—as is the standard under common law. Tahan v. Wagaraw Holding Co., 28 N.J. Super. 436, 444 (App. Div. 1953); Snyder v. I. Jay Realty Co., 30 N.J. 303, 316 (1959); see also Model Jury Charges (Civil), 5.20F(1), "Adult Trespasser—Defined and General Duty Owed," at 3 (rev. Nov. 2022) (stating "[a]n owner/occupier of property owes a duty to a trespasser to refrain from acts which willfully injure the trespasser.")

11

(Emphasis added). "[T]he common-law duty to refrain from willful injury to a trespasser remains fully applicable, and in fact may be viewed as part of the modern foreseeability-based rule." Baker & Drazin, New Jersey Premises Liability, cmt. 3:3-1 at 75-76 (2025). There is no authority to assert that a homeowner has a duty to discover latent defects as it pertains to trespassers. Based on the record provided, no jury could have concluded the estate willfully injured plaintiff. There are no material facts in dispute regarding the estate.

The estate's duty thus hinges on whether plaintiff's presence at the property was foreseeable. Brett, 144 N.J. at 509. Plaintiffs' assertion that the trespass was foreseeable because of the former residents trespassing, is belied by the facts and relevant legal standards. The estate concluded its eviction proceedings in August 2021. Therefore, for two years preceding plaintiff's injuries, the estate had no express knowledge of trespassers. Further, the estate placed signage—which plaintiff admits to having ignored—to deter future trespassers.

Plaintiff' also asserts the court erred in not finding a business invitee relationship existed between plaintiff, Cyprexx, BNYM, and SLS. Moreover, plaintiff asserts the court failed to conduct a Hopkins duty analysis for these defendants.

Plaintiff was not a business invitee. Considering plaintiff was acting in furtherance of Noble's business interests, not defendants', plaintiff was, at best, a licensee. See Rowe, 209 N.J. at 43. Plaintiffs' claim still fails to overcome the hurdle of being permitted to enter the property. Defendants did not permit entities like Noble to view the property in anticipation of the Sheriff's sale.[3] Further, the notice of Sheriff's sale cannot, under any reasonable review of the notice's plain language, be understood as an invitation to enter upon the property and inspect it. Under these facts, plaintiff was a trespasser, owed only a minimal duty of care.

Even viewing the facts of the record in the light most favorable to plaintiffs, and conducting a Hopkins analysis, plaintiffs' claim fails. Primarily, Hopkins is distinguishable; that case involved an open house where individuals were expressly invited to come and view the property. Hopkins, 132 N.J. at 432. Accordingly, the Court held "[b]ased on the nature and circumstances surrounding an open house, we conclude that implicit in the broker's invitation to customers is some commensurate degree of responsibility for their safety while visiting the premises." Id. at 441. Here, there is no analogous invitation

---

[3] Although this incident occurred in 2021, since 2023 prospective Sheriff's sale purchasers are precluded from entering viewing the property and creditors are immune from liability. See N.J.S.A. 2A:50-56a(a) and (b).

A-3935-23

and thus, no analogous degree of responsibility. Additionally, in Hopkins, the Court reasoned that individuals who attend open houses confer a benefit upon the broker, thus, the broker must owe some duty of care. Conversely, here, plaintiff's actions only sought to benefit Noble.

B.

We now turn to plaintiffs' claim the court erred by prematurely granting summary judgment before the DED. First, this claim is only applicable to the estate. The record makes clear that the DED was extended until May 7, 2024. Included in the order extending discovery, was a requirement that plaintiffs serve expert reports by March 15, 2024. The estate was granted summary judgment on April 12, 2024, and the remaining defendants were granted summary judgment on July 5, 2024. Thus, it is undisputed that only the estate was granted summary judgment before the DED—though it was after plaintiffs were ordered to serve expert reports.

Although plaintiffs argue that the trial judge's confusing statements created a "reasonable presumption" that summary judgment was granted to all defendants, this argument is unavailing. "[I]t is well-settled that appeals are taken from orders and judgments and not from opinions, oral decisions, informal written decisions, or reasons given for the ultimate conclusion." Do-Wop Corp.

14

v. City of Rahway, 168 N.J. 191, 199 (2001) (citing Heffner v. Jacobson, 100 N.J. 550, 553 (1985)); see also E.S. for G.S. v. Brunswick Inv. Ltd. Partnership, 469 N.J. Super. 279, 292 (App. Div. 2021). Thus, because the initial summary judgment order only applies to the estate, plaintiffs cannot use the court's statements at oral arguments as a basis for alleging summary judgment was prematurely granted to all defendants.

To begin, Rule 4:46-1 indeed permits a party to move for summary judgment even if discovery is incomplete. See Rule 4:46-1 (permitting a motion for summary judgment "at any time" after the expiration of thirty-five days from service of the pleadings). However, "'[g]enerally, summary judgment is inappropriate prior to the completion of discovery.'" Branch v. Cream-O-Land Dairy, 459 N.J. Super. 529, 541 (App. Div. 2019) (quoting Wellington v. Estate of Wellington, 359 N.J. Super. 484, 496 (App. Div. 2003)). Nevertheless, the Supreme Court has articulated that "[a] motion for summary judgment is not premature merely because discovery has not been completed . . . ." Badiali v. New Jersey Mfrs. Ins. Group, 220 N.J. 544, 555 (2015). Instead, a plaintiff asserting summary judgment was premature is obligated "to demonstrate with some degree of particularity the likelihood that further discovery will supply the missing elements of the cause of action." Wellington, 359 N.J. Super. at 496

15

(quoting Auster v. Kinoian, 153 N.J. 52, 56 (App. Div. 1997), certif. denied, 177 N.J. 493 (2003)).

Here, plaintiffs' primary contention, as it was before the trial judge, is that discovery was premature because plaintiffs were unable to present their expert's report. What is confusing, however, is that on April 12, 2024, plaintiffs' counsel conceded that he: (1) already had an expert; (2) the expert had conducted an inspection of the property "within a week of the accident"; but (3) plaintiffs were not in possession of the expert's report. Notably, when these concessions were made, plaintiffs were past the date by which expert reports were ordered to have been served. Additionally, plaintiffs make no representation as to what the expert's report will say; instead, plaintiffs merely assert that an expert report was required and thus, reports should have been exchanged.

Under these facts, plaintiffs cannot meet the standard of demonstrating, with particularity, that further discovery would have aided their claim. See Wellington, 359 N.J. Super. at 496. When summary judgment was granted to the estate, multiple interested parties had been deposed, discovery had been extended, and plaintiffs provided no reasonable basis for why their expert's report had not been provided at that time. Accordingly, notwithstanding that summary judgment was granted twenty-five days before the DED, there were no

16

material facts in dispute and additional discovery would not have aided plaintiffs' claims.

To the extent we have not specifically addressed any of plaintiff's arguments, we conclude those arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

A-3935-23